

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00398-CR

Robert **WATSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 274th Judicial District Court, Guadalupe County, Texas
Trial Court No. 11-1543-CR
Honorable Gary L. Steel, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  December 4, 2013

AFFIRMED

Appellant Robert Watson was convicted by a jury of delivery of a controlled substance and

sentenced to ten years confinement in the Institutional Division of the Texas Department of

Criminal Justice.  On appeal, Watson asserts (1) the trial court erred in allowing the cocaine, the

photographs of the cocaine, and the laboratory report into evidence because the State failed to

properly authenticate the alleged cocaine's chain of custody; (2) there was insufficient evidence

of corroboration and the trial court erred in failing to provide an instruction regarding such; (3) the

trial court erred in failing to provide an instruction that the alleged cocaine was either tampered

with or unlawfully obtained; and (4) the silent videotape in question violated Watson's rights under the Confrontation Clause of the United States and Texas Constitutions. We affirm the trial court's judgment.

## BACKGROUND

In April of 2011, the Guadalupe County Sheriff's Office Narcotics Division entered into an agreement with a confidential informant, Melvin Bruns, to help secure several drug cases for indictment. In exchange for Bruns's help, the District Attorney's Office agreed not to file an evading arrest charge pending against Bruns. One of the individuals identified by Bruns was Appellant Robert Watson.

On April 12, 2011, Lieutenant John Flores fitted Bruns with an audio/video recording device. Under surveillance by the sheriff's office, Bruns drove to Watson's residence, parked the vehicle, and entered Watson's home. During the transaction, Bruns allegedly purchased cocaine from Watson. Bruns then drove to a predetermined location to meet Lieutenant Flores and Investigator Kris Deslatte. Investigator Deslatte obtained the substance in question from Bruns's vehicle. The entire proceedings, from shortly after Bruns was fitted with the recording device until Investigator Deslatte removed the substance from Bruns's vehicle, were recorded. Later analysis proved the substance in question was approximately 1.83 grams of cocaine.

On May 15, 2011, Watson was charged with one second-degree felony count—delivery of a controlled substance, namely cocaine. Because Bruns's whereabouts were unknown at the time of trial, Bruns did not testify. The jury returned a guilty verdict, and after finding the State's enhancement allegation true, assessed punishment at ten years confinement. Watson appeals.

## PROPER AUTHENTICATION AND CHAIN OF CUSTODY

In his first three issues, Watson argues the State failed to properly authenticate the chain of custody regarding the cocaine. More specifically, Watson argues the substance, collected by the

officers and tested at the lab, cannot be tied directly to Watson. Accordingly, Watson argues the trial court erred in admitting the cocaine, the photographs of the cocaine, and the laboratory analysis of the cocaine.

## A. Standard of Review

An appellate court reviews a trial court's admission of evidence under an abuse of discretion standard. *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998) ("The standard of review for a trial court's ruling under one of the rules of evidence is abuse of discretion."); *see also Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004). The trial court does not abuse its discretion by admitting evidence unless the court's determination lies outside the zone of reasonable disagreement. *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007) (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)); *Casey*, 215 S.W.3d at 879.

## B. Chain of Custody

Prior to admitting evidence in a criminal case, the court must determine whether the chain of custody, i.e., continuous and uninterrupted possession of the evidence, was preserved. *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). A chain of custody is sufficiently authenticated when the State establishes "the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory." *Id.*; *see also Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *disapproved of on other grounds*, *Horton v. California*, 496 U.S.128 (1990) *and Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998). Links in the chain may be proven by circumstantial evidence. *Bass v. State*, 830 S.W.2d 142, 146 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). In *Florence v. State*, No. 14-94-00380-CR, 1996 WL 233734, at *4–5 (Tex. App.—Houston [14th Dist.] May 9, 1996, pet. ref'd) (mem. op., not designated for publication), the contraband was discarded by a suspect as he ran from the officer. Although the

evidence was not collected until after the chase ended, the court held that "the interval between appellant's disposal and the officer's retrieval did not constitute a break in the chain of custody." *Id.* at *4.

### 1.    Texas Rule of Evidence 901

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). The question before the trial court is whether "a reasonable juror could find that the evidence has been authenticated or identified." *Druery*, 225 S.W.3d at 502. Courts traditionally provide a broad reading of Rule 901, allowing the jury to weigh the credibility of the evidence, "[s]o long as the authenticity of the proffered evidence was at least within the zone of reasonable disagreement." *Campbell v. State*, 382 S.W.3d 545, 552 (Tex. App.—Austin 2012, no pet.) (internal quotation marks omitted).

### 2.    Necessary Predicate

The predicate for introduction of a photograph and a silent videotape not accompanied by sound requires "proof of (1) its accuracy as a correct representation of the subject at a given time, and (2) its material relevance to a dispute issue." *Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988) (concluding motion pictures without sound are simply a collection of photographs); *see also Benford v. State*, No. 03-02-00686-CR, 2005 WL 240611, at *2 (Tex. App.—Austin Feb. 3, 2005, pet. ref'd) (mem. op., not designated for publication). The predicate need not be laid by the photographer, the individual being photographed, or even a person present in the photograph in question. *Huffman*, 746 S.W.2d at 222. Any witness observing the scene depicted in the photograph may lay the predicate so long as the witness can provide testimony based on personal knowledge, sufficient to support a finding that the matter in question is what its proponent claims. *Id.*; *see also* TEX. R. EVID. 901(a).

### 3. Predicate Laid Before the Trial Court

Although the silent video was directly offered through Detective John Flores, the trial court could also look to the testimony of Detective Kris Deslatte for authentication and knowledge of the video's contents. The officers testified that, despite Bruns' criminal history and current fugitive status, Bruns was very reliable and helped make several successful cases. On the day in question, officers listened to a phone conversation between Bruns and Watson. More specifically, the officers heard Watson invite Bruns to his residence to presumably purchase drugs.

Prior to Bruns leaving for Watson's residence, the officers searched Bruns and his vehicle for money or drugs and then fitted Bruns with a recording device. Only after confirming Bruns and the vehicle were clean, the officers handed Bruns money with which to purchase the drugs. The officers maintained full surveillance of Bruns traveling to Watson's residence, watched as Bruns entered Watson's residence, and watched Bruns as he exited the residence approximately eleven minutes later. The officers then picked up their surveillance of Bruns as they followed him to an agreed meeting point. The videotaped recording ran continuously, for over half an hour, from the moment the officers identified themselves on the recording until they removed the videotape after the purchase. The only break in the officers' visual surveillance was the time Bruns rounded the corner and entered Watson's residence. The officers confirmed the seized drugs were not in Bruns' vehicle or on his person prior to entering Watson's residence.

Although the audio portion of the videotape was muted before the jury, the silent recording shows an exchange of money and Watson weighing something on a scale. Based on the information provided during the controlled buy, the officers obtained and executed a search warrant on Watson's residence. The officers testified to their personal knowledge of the contents of the videotaped recording, including the beginning, the end, and all but a brief period of time when the informant was out of view. Additionally, however, after obtaining the search warrant,

the officers were able to testify that the silent videotaped recording accurately reflected the interior of the residence, and more specifically, the room in which Bruns met with Watson.

### 4. Admission of the Videotaped Recording

The court's opinion in *Ballard v. State*, 23 S.W.3d 178, 180 (Tex. App.—Waco 2000, no pet.), is instructive. In *Ballard*, the officers used an undercover informant, fitted him with video recording camera, and activated the camera as the informant exited the officer's vehicle. *Id.* The informant met with the defendant and purchased cocaine. *Id.* The informant then met back with an officer, gave the officer the cocaine in question and the officer turned the video recording off. *Id.* In determining that the videotaped recording was properly authenticated under Rule 901, the court identified testimony it considered relevant in determining if the silent videotaped recording was properly authenticated: the recording was continuous and uninterrupted, the officer corroborated specific items in the video recording, and the fact-finder could compare the recorded video with the physical appearance of the defendant. *Id*. at 182. The court further held that absent affirmative evidence of fraud or tampering, alleged issues concerning gaps in the chain of custody affect the weight to be given the evidence and not the admissibility of the evidence. *Id.* at 183; s*ee Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet. ref'd); *see also Druery*, 225 S.W.3d at 503–04; *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997); *Ballard*, 23 S.W.3d at 183 (noting informant and officers testified video recording had not been altered in any respect and defendant offered no affirmative evidence of tampering).

The current silent videotaped recording is not different. The officers had personal knowledge of the contents contained on the videotape. *See Huffman*, 746 S.W.2d at 222. The tape was continuous and uninterrupted, the officers corroborated specific items in the recorded video, and the fact-finder could compare the recorded video with the physical appearance of the defendant. *See Ballard*, 23 S.W.3d at 182. The officers searched Bruns and his vehicle prior to

and immediately after the purchase. Additionally, there was no evidence of tampering or contamination. *See Ballard*, 23 S.W.3d at 183. The officers affirmatively stated the videotape accurately represented the scene and events it purported to portray. *See Huffman*, 746 S.W.2d at 222. Although the officers were not present during the entire videotaped recording, the trial court could reasonably conclude the officers properly laid the predicate under Rule 901(a). *Id.*; *see also Ballard*, 23 S.W.3d at 183.

### C.      Admissibility of Cocaine, Photos, and Lab Report

Similar to the admission of the silent videotape, the officers properly authenticated the chain of custody in regard to the cocaine, the still photos, and the lab report. *See Druery*, 225 S.W.3d at 502. The officers testified that, to the best of their abilities, they were confident the vehicle did not contain cocaine and the confidential informant did not have cocaine on his body prior to entering Watson's residence.

Based on the evidence presented at trial, including the officers' testimony and the silent videotaped recording, we agree that a reasonable juror could have concluded the cocaine produced at trial was the same cocaine delivered by Watson on the recording. Accordingly, any gaps in the chain of custody regarding the cocaine went to the weight of the evidence and not to its admissibility. *See Druery*, 225 S.W.3d at 502; *Dossett*, 216 S.W.3d at 17. Watson's complaints regarding the trial court's admission of the cocaine, the photographs of the cocaine, and the laboratory analysis report of the cocaine are overruled.

CORROBORATING EVIDENCE UNDER
TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 38.141

Watson next argues the corroborating evidence was insufficient "to connect [Watson] with the offense committed" and the trial court erred in failing to instruct accordingly. *See* TEX. CODE CRIM. PROC. ANN. § 38.14 (West 2005) ("A conviction cannot be had upon the testimony of an

accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."); *Simmons v. State*, 205 S.W.3d 65, 71–72 (Tex. App.—Fort Worth 2006, no pet.) (observing that courts look to article 38.14 for guidance in interpreting article 38.141); *Cantelon v. State*, 85 S.W.3d 457, 459–60 (Tex. App.—Austin 2002, no pet.) (same). Watson did not object at trial; however, his failure to do so is only relevant in determining which standard of harm applies. *See Deroven v. State*, No. 04-98-00942-CR, 2000 WL 84650, at *2 (Tex. App.—San Antonio Jan. 26, 2000, pet. ref'd) (mem. op., not designated for publication) (citing *Howard v. State*, 972 S.W.2d 121, 125–26 (Tex. App.—Austin 1998, no pet.)).

## A.      Texas Code of Criminal Procedure Article 38.141

Although officers routinely utilize confidential informants, this type of "accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person." *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998) (footnote omitted) (explaining the purpose of article 38.14); *accord Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). Texas Code of Criminal Procedure article 38.141 provides as follows:

(a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement ***unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed***.

(b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a), (b) (emphasis added). In interpreting article 38.141, both parties agree cases construing the limitations on admission of accomplice witness testimony set forth in article 38.14 are applicable. *See Simmons*, 205 S.W.3d at 71–72; *Cantelon*, 85 S.W.3d

at 459–60 (noting statutes substantially the same and suggesting same purpose and same standard for corroboration should apply). Both statutes attempt to ensure that a jury does not consider an accomplice witness's testimony unless it finds that other evidence corroborates the discredited witness's testimony. *Cantelon*, 85 S.W.3d at 460. With regard to article 38.141, the concern is even greater because the informant or covert witness is working with officers for "self-interested reasons." *Simmons*, 205 S.W.3d at 72 (citing *Cantelon*, 85 S.W.3d at 460).

When the evidence shows a witness is an accomplice as a matter of law, the trial court has a duty to instruct the jury that the witness is an accomplice and the witness's testimony must be corroborated to support a conviction. *See Druery*, 225 S.W.3d at 498–99 (requiring some evidence of an affirmative act on the part of the witness to assist in the commission of the charged offense before the jury instruction is required); *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). A defendant has the right to an accomplice witness instruction if the issue is raised by the evidence, regardless of the trial court's view of the credibility of the evidence. *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006).

**B.    Analysis**

There is no question that Bruns was a confidential informant exchanging information for a reduction or dismissal of another case. *See Smith*, 332 S.W.3d at 439. Yet, the crux of this case, and Watson's objections on appeal, turn on the fact that Bruns did not testify. Watson argues that although Bruns did not testify in person, he was the source of "the entirety of the evidence used against [Watson]."

The State points to *Bingham v. State*, 913 S.W.2d 208, 209–10 (Tex. Crim. App. 1995), for the proposition that out–of–court statements are not testimony under articles 38.14 and 38.141. The *Bingham* court, analyzing article 38.14 in light of the legislative intent and common meaning, concluded "we read Article 38.14 to embrace only the in–court 'testimony' of an accomplice." *Id.*

at 211. The State agreed to offer the videotaped recording without the audio component before the jury. Thus, there was no "in-court" testimony and article 38.141 is not applicable. Watson has not directed this court to any contrary case law. Accordingly, this court need not address the sufficiency of the corroborating evidence and the trial court was not required to instruct the jury under article 38.141.

**REQUIRED INSTRUCTION UNDER**
**TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 38.23**

Watson next urges the trial court erred in failing to instruct the jury that the cocaine in question was possibly tampered with in violation of article 38.23. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005).

**A.      Texas Code of Criminal Procedure Article 38.23**

"[W]hen an issue of fact is raised [regarding whether the evidence requires an instruction under article 38.23], a defendant has a statutory right to have the jury charged accordingly." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). Texas Code of Criminal Procedure article 38.23 provides as follows:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a). As a prerequisite to Watson's entitlement to the jury instruction in question, Watson was required to show the following:

> (1)    the evidence before the jury raised an issue of fact,
> (2)    the evidence in question was affirmatively contested, and
> (3)    the contested issue was "material to the lawfulness of the challenged conduct in obtaining the evidence."

*See Madden*, 242 S.W.3d at 510. The *Madden* court further opined that questions by defense counsel on cross-examination are not sufficient to raise a disputed fact. *Id.* at 513–14. To the

contrary, article 38.23 requires affirmative evidence to raise an issue of fact. *Id.* at 515; *see* TEX.

CODE CRIM. PROC. ANN. art. 38.23.

**B.     Analysis**

Watson contends the following alleged factual inconsistencies amounted to affirmative

evidence that created a factual dispute as to whether Bruns tampered with the evidence:

(1)     Bruns entered the residence with $600 and was instructed to purchase 14
         grams of cocaine,
(2)     Bruns provided the officers with only 1.83 grams of cocaine,
(3)     Bruns returned only $400 to the officers,
(4)     Lieutenant Flores testified $200 was significantly more than the cocaine
         should have cost,
(5)     Lieutenant Flores testified the discrepancies in the amount of cocaine and
         the money returned by Bruns caused him concern,
(6)     Lieutenant Flores testified the circumstances raised the question of
         tampering, and
(7)     there appeared to be a difference in the appearance of the cocaine introduced
         into evidence and the cocaine seen in the video recording.

At trial, and on appeal, Watson argues there is a "significant discrepancy between the amount of

cocaine Melvin Bruns was instructed to purchase and the amount he purchased." Although on

cross-examination Lieutenant Flores conceded *the possibility* of tampering, there was no testimony

Bruns tampered with the evidence. In fact, the State argues Watson never presented any evidence

refuting the amount of drugs delivered or the amount of money paid for the drugs.

The only evidence before the trial court was defense counsel's cross-examination and

argument regarding the amount of contraband obtained from Watson. Defense counsel claimed

the amount of cocaine returned by Bruns was disproportionate to the dollars provided. Watson

did not argue any alleged discrepancies were "material to the lawfulness of the challenged conduct

in obtaining the evidence." *See Madden*, 242 S.W.3d at 510. To the contrary, he insinuated that

Bruns "pocketed" some of the cocaine. Even if Bruns retained a portion of the cocaine, that is not

evidence that Watson did not deliver cocaine to Bruns. As the trial court pointed out, if Bruns had

returned with the proportionate amount suggested by defense counsel, it would not affect the finding that Watson delivered the cocaine. To the contrary, whether Bruns failed to return the entire amount Watson provided to Bruns only affected the penalty range under which the State charged Watson.

Because Watson failed to produce any affirmative evidence of tampering or unlawful conduct, we overrule this issue.

CONFRONTATION CLAUSE

In his last issue on appeal, Watson argues the trial court erred in admitting the silent video recording from a device worn by Bruns in violation of his right to confrontation. Watson urges the recording contained "statements" by Bruns.

### A.      Standard of Review

Although an appellate court defers to a trial court's determination of historical facts and credibility, constitutional rulings are reviewed de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) (citing *Lilly v. Virginia*, 527 U.S. 116, 137 (1999)). This includes a determination of whether a statement is testimonial or non-testimonial. *Id.*

### B.      Confrontation Clause

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 400–01 (1965). The Confrontation Clause and cross-examination are designed, at least in part, to ensure both fairness in criminal proceedings and the reliability of evidence offered before the fact-finder. *Lilly v. Virginia*, 527 U.S. 116, 123–24 (1999). Cross–examination provides an avenue to test the believability of a witness and the truth of that witness's testimony. *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

*1. Testimonial Statements Under the Confrontation Clause*

The Confrontation Clause is designed to guard against the presentation of testimonial and out-of-court statements made by an absent witness. *Wall*, 184 S.W.3d at 734–35. At the heart of the issue is a defendant's inability to utilize the safeguards of cross-examination to ensure and test the witness's credibility. *Id.* at 735–36. An appellate court weighs each Confrontation Clause issue on a case-by-case basis, balancing the State's right to present evidence with the defendant's right to cross-examine and the risk factors associated with admission of the evidence. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).

In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the Supreme Court held that the Confrontation Clause bars the admission of an out-of-court testimonial statement made by a non-testifying witness absent evidence (1) the witness is unavailable to testify, and (2) "the defendant has had a prior opportunity to cross-examine" the witness. Here, the key issue is whether the non-audio statement was testimonial. *Id.*

In determining whether a statement is testimonial, an appellate court looks to "the formal nature of the interaction, the intent of the declarant, or some combination of the two factors." *Moore v. State*, 169 S.W.3d 467, 471 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Crawford*, 541 U.S. at 68). The Confrontation Clause is more a procedural guarantee than a substantive one. *Crawford*, 541 U.S. at 61. Thus, if the proposed testimony is the functional equivalent of an ex parte, in-court statement, the statement is testimonial. *Wall*, 184 S.W.3d at 735. "Statements are testimonial when the circumstances objectively indicate that there is no ongoing emergency, and that the primary purpose of the interrogation is to establish or prove ***past events*** potentially relevant to later criminal prosecution." *Terry v. State*, 397 S.W.3d 823, 833 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (emphasis added) (citing *Michigan v. Bryant*, 131 S. Ct. 1143, 1154–55

(2011)). Importantly, however, testimonial statements are not limited to statements given under oath. *See Crawford*, 541 U.S. at 52.

2. *Testimonial Under the Fifth Amendment*

In *Poulos v. State*, 799 S.W.2d 769, 770 (Tex. App.—Houston [1st Dist.] 1990, no pet.), Poulos was stopped for suspected driving under the influence and the officer requested she perform several field sobriety tests. *Id.* During trial, Poulos argued the silent videotape was a custodial interrogation and, therefore, violated her federal and state constitutional protections against self-incrimination. *Id.* at 770–71. Relying on the Court of Criminal Appeals decision in *Miffleton v. State*, 777 S.W.2d 76, 78 (Tex. Crim. App. 1989), the court held the images of Poulos captured on the silent videotape were "'not testimonial in nature and therefore [do] not offend the Fifth Amendment privilege against self-incrimination.'" *Poulos*, 799 S.W.2d at 771 (alteration in original) (quoting *Miffleton*, 777 S.W.2d at 78). We conclude that for the same reasons the silent videotape was not testimonial under the Fifth Amendment, it is not testimonial under the Confrontation Clause.

## C. Texas Rule of Evidence 801

The State contends that in addition to the videotape being non-testimonial, the silent videotape is not a statement under Texas Rule of Evidence 801. *See* TEX. R. EVID. 801. Rule 801(a) defines a statement as "(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression." *Id.* "Rule of Evidence 801(e) identifies circumstances in which certain statements are not hearsay." *Paredes*, 129 S.W.3d at 534.

Rule of Evidence 801(e)(2)(B), provides, in part, that an out-of-court statement is not hearsay if it is (1) an admission by a party opponent, (2) offered against that party, and (3) "a statement of which the party has manifested an adoption or belief in its truth." TEX. R. EVID.

801(e)(2)(B). The proponent bears the burden of demonstrating, by a preponderance of the evidence, the statement meets the criteria for an admission by a party opponent. *Meador v. State*, 812 S.W.2d 330, 333 (Tex. Crim. App. 1991); *accord Legate v. State*, 52 S.W.3d 797, 802 (Tex. App.—San Antonio 2001, pet. ref'd).

**D.      Analysis**

Here, the silent videotape was an ex parte statement and not a structured police questioning. *See Crawford*, 541 U.S. at 50–53. More specifically, it was not an effort to establish or prove past events as discussed in *Terry*. *See Terry*, 397 S.W.3d at 833. Watson has not provided any case law to support the videotaped recording showing Bruns's actions, including his exchange with Watson, violated Watson's rights under the Confrontation Clause. The setting of a confidential informant purchasing contraband "is not one which 'would lead an objective witness reasonably to believe that the statement would be available' for later judicial proceedings." *Curry v. State*, 228 S.W.3d 292, 299 (Tex. App.—Waco 2007, pet. ref'd) (quoting *Crawford*, 541 U.S. at 52). As the State argued, especially in light of the audio redaction, the recording is more akin to a surveillance video than a testimonial statement by any individual. In light of the Court of Criminal Appeals' determination that a silent videotape is no different than a collection of photographs, we agree with the State's characterization of the videotape. *See Huffman*, 746 S.W.2d at 222.

The videotape was played without the audio for the jury. Although Watson argues the recording represents "testimony" under the Confrontation Clause, the case law does not appear to support his position. Bruns was outfitted by the officers. There was not, however, any formal questioning by the officers and nothing compelling Watson to be at the scene or to stay at the scene. In fact, there were no statements made by either Watson or Bruns—only silent images.

Watson argues the videotaped recording represents nonverbal conduct. The only images of Bruns are his hands (1) on the steering wheel of the vehicle, (2) knocking on the door of

Watson's residence, and (3) exchanging of money for an alleged controlled substance. There is no testimony or support for the proposition that the silent video recording was "intended by the person as a substitute for verbal expression." *See* TEX. R. EVID. 801(a)(2). We conclude the silent videotaped recording in question was neither testimonial nor a statement and, therefore, did not invoke the Sixth Amendment or violate Watson's rights under the Confrontation Clause.

CONCLUSION

Based on the evidence presented at trial, including the officers' testimony and the continuous and uninterrupted videotaped recording, the trial court did not err in concluding a reasonable juror could have determined the cocaine produced at trial was the same cocaine delivered by Watson on the videotaped recording. Thus, any alleged gaps in the chain of custody of the cocaine do not affect its admissibility, but instead go to the jury's determination of weight of the evidence. *See Druery*, 225 S.W.3d at 502; *Dossett*, 216 S.W.3d at 17. Accordingly, the trial court did not err in admitting the cocaine, the photographs of the cocaine, or the laboratory analysis report of the cocaine.

Additionally, the trial court did not err in failing to give either of the requested jury instructions. Because Bruns did not testify, there was no "in-court" or accomplice testimony necessitating additional ties between Watson and the delivery of the cocaine. *See Bingham*, 913 S.W.2d at 211. Article 38.141 is, therefore, not applicable and the trial court was not required to instruct the jury under such. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141; *Bingham*, 913 S.W.2d at 211. Similarly, without affirmative evidence of tampering or unlawful conduct by the officers, Watson was not entitled to an instruction under article 38.23. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23; *Dossett*, 216 S.W.3d at 17.

Finally, because we conclude the silent videotaped recording in question was neither "testimonial" nor a statement, the recording did not violate Watson's right of confrontation. Accordingly, the judgment of the trial court is affirmed.

Patricia O. Alvarez, Justice

PUBLISH