

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00553-CR

Nicole Patrice **SELECTMAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2015CR9689
Honorable Lorina I. Rummel, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Rebeca C. Martinez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed: March 25, 2020

AFFIRMED

Nicole Selectman appeals her conviction for aggravated assault. She argues the trial court erred by admitting evidence over her chain-of-custody objection and in violation of her confrontation rights, and by denying her request to submit jury instructions on self-defense and defense of another. We affirm the judgment of conviction.

### PROCEDURAL BACKGROUND

Selectman was indicted for the aggravated assault of her ex-girlfriend, Erica. Selectman pled not guilty and the case proceeded to a jury trial. The evidence at trial showed Erica and

Selectman were living together in Erica's house in Converse, Texas, even though their relationship had ended. On April 2, 2015, Erica was shot in her left arm by someone in her home.

There is conflicting evidence as to who shot Erica. Erica testified Selectman shot her during an argument the two had about Erica evicting Selectman. Other evidence showed Erica reported an intruder had entered her house. And, there was testimony showing Erica and her fiancé, boyfriend, or ex-boyfriend "Mac" were at the house arguing about money, Mac and Selectman had a "scuffle," and a gun "went off" hitting Erica's arm.

During trial, the court admitted evidence, over Selectman's objection, showing Selectman had gunshot residue on her hands. The jury found Selectman guilty and assessed a punishment of ten years in prison. The trial court then imposed Selectman's punishment in open court. After the trial court signed the judgment of conviction, Selectman filed a timely notice of appeal.

## ADMISSION OF GUN RESIDUE EVIDENCE

Selectman argues the trial court erred by admitting evidence regarding the gunshot residue test and the test's results over her chain-of-custody and confrontation objections. At trial, City of Converse officer Iris Mata testified she observed a lieutenant obtain a sample from Selectman's hands for gunshot residue testing. A Bexar County forensics scientist testified about the results of the test, concluding Selectman had gunshot residue on her hands.

### A. Standard of Review

We review "a trial court's admission of evidence under an abuse of discretion standard." *Watson v. State*, 421 S.W.3d 186, 189 (Tex. App.—San Antonio 2013, pet. ref'd). "The trial court does not abuse its discretion by admitting evidence unless the court's determination lies outside the zone of reasonable disagreement." *Id.* at 190.

**B. Chain of Custody**

"A chain of custody is sufficiently authenticated when the State establishes the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory." *Id.* (internal quotation marks omitted). "Links in the chain may be proven by circumstantial evidence." *Id.* Selectman argues the chain of custody was not established because the lieutenant who administered the test did not testify. However, the trial court admitted the gunshot residue test kit with the chain of custody noted on it, Mata testified she saw the lieutenant take the sample from Selectman's hands, and other evidence showed the kit included the sample the lieutenant had taken from Selectman's hands. Selectman does not challenge the sufficiency of other evidence establishing the chain of custody. We therefore cannot say the trial court's ruling to admit the gunshot residue evidence over Selectman's chain-of-custody objection was outside the zone of reasonable disagreement. *See id.* We overrule this issue.

**C. Confrontation**

A defendant has a right to confront witnesses who make testimonial statements against her. *State v. Guzman*, 439 S.W.3d 482, 485 (Tex. App.—San Antonio 2014, no pet.). This right extends to lab technicians who analyze sample materials, such as a blood draw, and prepare reports based on that analysis, because those statements are testimonial. *Id.* at 485–88. The right does not extend "to a person who only [obtains sample materials] and has no other involvement in the analysis or testing of [the] sample." *Id.* at 488.

Selectman argues she had a right to confront the lieutenant who obtained the sample from her hands. But the lieutenant is a person who obtained sample materials and had no other involvement in the analysis or testing of the sample. *See id.* Selectman had the opportunity to cross-examine Mata, who observed how the lieutenant obtained the sample, and the Bexar County forensics scientist, who conducted the test and analysis and prepared the report. Because the record

does not show the admission of the results of the gunshot residue test violated Selectman's confrontation rights, we overrule this issue.

SUBMISSION OF DEFENSIVE ISSUES

Selectman argues the trial court erred by denying her requested instructions on self-defense and defense of others. "Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "Then, if we find error, we analyze that error for harm." *Id.*

## A. Applicable Law

"The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense." TEX. PENAL CODE § 2.03(c). The trial court must give a requested instruction on every defensive issue raised by the evidence regardless of the source, strength, or credibility of that evidence. *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). Even a minimum quantity of evidence is sufficient to raise a defense as long as the evidence would support a rational jury finding as to the defense. *Id.*

"Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007). When reviewing a trial court's decision denying a request for a defensive issue instruction, we view the evidence in the light most favorable to the defendant's requested submission. *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017).

A person is justified in using force against another when and to the degree that person reasonably believes the force is immediately necessary to protect herself against another person's use or attempted use of unlawful force. TEX. PENAL CODE § 9.31. Deadly force is justified if a person would be justified in using force under section 9.31 and she reasonably believes deadly

force is immediately necessary to protect herself against another's use or attempted use of deadly force. *Id.* § 9.32.

A person is justified in using deadly force to protect a third person if: (1) she would have been justified in using deadly force to protect herself against the unlawful deadly force she "reasonably believes to be threatening the third person [s]he seeks to protect," and (2) she "reasonably believes . . . intervention is immediately necessary to protect the third person." *Id.* § 9.33. "Reasonable belief" is defined as a belief that would be held by an "ordinary and prudent" person "in the same circumstances as the actor." *Id.* § 1.07(a)(42).

## B. The Evidence

The evidence at trial was conflicting as to who shot Erica and under what circumstances. Erica testified that on the morning of April 2, 2015, she and Selectman had an argument after Selectman came home from work. Erica had asked Selectman to move out of the house, and Selectman refused. Erica testified she went to the police station and sought help with evicting Selectman, and then came back home. Erica further testified Selectman started asking her whether she was "talking to" or "sleeping with" anyone else and, after Erica denied doing so, Selectman accused her of lying.

According to Erica, Selectman grabbed a gun and shot Erica. Erica went to the restroom and locked the door; Selectman banged on the door, which Erica eventually opened; and Erica allowed Selectman to look through her phone messages. Erica further testified Selectman pointed the gun to her head and threatened to kill her. Erica also stated that when Selectman refused to call for medical help, Erica agreed to tell the police an intruder came into the house and Selectman saved her. Selectman drove Erica to the hospital. Erica testified she initially told hospital staff that an intruder came into her home and she was shot, but then, after Selectman was no longer in the room, told a nurse Selectman had shot her.

Erica's medical records contain different versions of who shot her. One version is that "she was shot by a stranger in her house after leaving door unlocked." Another version is that Erica was shot "by a familiar acquaintance" and "then held at gunpoint for another 30 minutes." And another version is that Erica "was shot . . . by her ex-boyfriend."

Selectman sought to prove her theory of the case through the testimony of Tracy Thomas, a friend of both Erica's and Selectman's. Thomas testified Erica had told her that Selectman "was in trouble for something that she didn't do," and she "had a boyfriend behind [Selectman's] back." Thomas further testified Erica said that on the day of the incident, Erica "and her boyfriend were arguing about money" at Erica's house. When Selectman came home, she "instantly came upstairs to [Erica's] defense because she didn't know what was going on and I guess there was a gun involved and the gun went off in the middle of the struggle." Thomas stated Erica did not say who had the gun, but said Erica's boyfriend threatened to kill Erica if she did not testify against Selectman. According to Thomas, Erica had said Selectman "came upstairs and started scuffling with the boyfriend and in the midst of that the gun went off." Thomas also stated, "I've been through a similar situation to be afraid of someone and it will drive you to lie, because I've done it. I've been shot by my ex-husband, lied about who shot me because I was afraid of him."

**C. No Error**

We hold the trial court did not err by denying Selectman's request for instructions on self-defense and defense of another. The only evidence Selectman presented on the need to use deadly force was that Erica and her boyfriend, who Selectman thought was an intruder, were arguing about money, and she and Erica's boyfriend got into in a scuffle and were tussling around. This evidence is insufficient to permit a jury to rationally infer: (1) Selectman shot the gun and "admit[ted] to [her] otherwise illegal conduct; and (2) Selectman reasonably believed immediate use of deadly force—shooting at Erica's boyfriend or an intruder, but missing and hitting Erica—

was necessary for the defense of herself or of Erica. *Jordan v. State*, No. PD-0899-18, 2020 WL 579406, at *1 (Tex. Crim. App. Feb. 5, 2020); *accord Hunter v. State*, No. 05-18-00458-CR, 2019 WL 2521721, at *6 (Tex. App.—Dallas June 19, 2019, pet. ref'd) (mem. op.) (holding evidence of a "tussle" and "scuffle" did not justify the use of deadly force in defense).

**D. No Harm**

Alternatively, we hold that any error in not submitting the defensive instructions was harmless. "When, as here, the defendant has preserved error by requesting the challenged instruction, we reverse the conviction if the denial of the instruction resulted in some harm to the defendant." *Braughton v. State*, 569 S.W.3d 592, 613 (Tex. Crim. App. 2018). "'Some harm' means actual harm and not merely a theoretical complaint." *Id.* In considering harm, the degree of harm must be assessed in light of the record of the trial as a whole. *See id.*

During voir dire, defense counsel noted the existence of legal justifications for the use of deadly force, such as self-defense, defense of another, and the Castle Doctrine. In his opening statement, Selectman's counsel told the jury that the defense witnesses' testimony would show Erica was lying to protect her boyfriend, who had threatened her if she did not testify against Selectman. The opening statement was vague as to whether Selectman's theory of the case was that Selectman or Erica's boyfriend actually shot the gun.

The evidence about who shot Erica, under what circumstances, and whether she knew "Mac" was disputed. Thomas's testimony was vague, but the defense's evidence and trial counsel suggested an intruder or Erica's boyfriend shot Erica. The trial court admitted photographs of the inside of Erica's house from the day of the incident, and the photographs showed blood in the restroom and on the carpet outside of the restroom. The photographs did not appear to support one side's theory of the case more than the other side's theory. Erica's neighbor testified he was outside

smoking a cigar during the approximate timeframe of the incident. He stated he saw Selectman come and go from the house, but never saw Erica.

The jury charge instructed the jury on the mental states required for aggravated assault: intentionally, knowingly, and recklessly. During closing argument, Selectman argued that if she shot Erica, it was during a "scuffle" or "tussle" during which she was trying to defend Erica. Had the jury believed the evidence, this explanation would have negated the required mental states. In other words, had the jury believed Thomas's testimony, it would not have found that Selectman intentionally, knowingly, or recklessly caused Erica serious bodily injury. Considering the relevant parts of the record, we cannot say any error in denying Selectman's request for defensive instructions was harmful. *See* TEX. R. APP. P. 44.2(b).

CONCLUSION

We affirm the judgment of conviction.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH