

# NUMBER 13-20-00169-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**THE STATE OF TEXAS,** Appellant,

**v.**

**MIGUEL MARTINEZ,** Appellee.

## On appeal from the 332nd District Court of Hidalgo County, Texas.

## DISSENTING MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Dissenting Memorandum Opinion by Justice Silva**

This case poses the question: Can enough portions of a video recording be removed as to create an inaccurate representation of the original scene? I believe it can, as explained below. That is not to say that all video exhibits must contain all possible

footage; rather, a trial court should have the discretion to determine that, due to the amount of missing footage, a recording no longer accurately depicts the scene it purports to. The majority holds that the cell phone footage in question is admissible because the cell phone footage "accurately represented those portions of the original surveillance footage which [Officer Duran] chose to record." In so holding, the majority establishes that proponents of evidence need not prove that a video "accurately represent the scene in question" but merely accurately represents the portions of the scene the proponent chooses. *See Fowler v.* State, 544 S.W.3d 844, 849 (Tex. Crim. App. 2018). Because I believe the majority misinterprets *Fowler* and misapplies Texas Rule of Evidence 901, I respectfully dissent. *See id.*; TEX. R. EVID. 901.

## I.     BACKGROUND

The majority accurately recites the factual and procedural background of this case. I would like to note, however, that the cell phone footage recorded by Officer Duran includes several changes of camera angle and a near three-hour gap in footage between parts three and four.[1]

## II.     STANDARD OF REVIEW

A trial court's suppression ruling is reviewed under an abuse of discretion standard, and we will only reverse the trial court's ruling if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). Typically [we] must apply a bifurcated standard of review, giving almost total

---

[1] The exhibit in question contains a total of thirteen parts. Twelve of the parts contain footage from the police station while the thirteenth part shows security footage from Dollar General where Officer De La Mora allegedly purchased the alcohol bottles the same day.

2

deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a *de novo* standard of review to pure questions of law and mixed questions that do not depend on credibility determinations.

*Id.* at 922–23. However, a trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard and must be upheld if the trial court's ruling is within the zone of reasonable disagreement. *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020). "An appellate court would misapply the appellate abuse of discretion standard of review to reverse a trial court's admissibility decision solely because the appellate court disagreed with it." *Robbins v. State*, 88 S.W.3d 256, 260 (Tex. Crim. App. 2002). "A trial court judge is given considerable latitude with regard to evidentiary rulings." *Fowler*, 544 S.W.3d at 848. "Different trial judges may 'reach different conclusions in different trials on substantially similar facts without abusing their discretion.'" *Id.* (quoting *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007)).

"[T]he trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). As such, "the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted." *Id.* "[W]hen the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.* "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *De La Paz v. State*, 279 S.W.3d

3

336, 344 (Tex. Crim. App. 2009).

### III. AUTHENTICATION

**A. Applicable Law**

Before an item of evidence is admitted, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) ("[A]uthentication [is] a 'condition precedent' to admissibility of evidence." (citing TEX. R. EVID. 901(a))). Evidence that supports a finding of authenticity may include "[t]estimony that an item is what it is claimed to be." TEX. R. EVID. 901(b)(1). "The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" may also satisfy the requirement of authenticating an item of evidence. *Id.* 901(b)(4). Essentially, the proponent of evidence must "make a threshold showing that would be 'sufficient to support a finding that the matter in question is what its proponent claims.'" *Tienda*, 358 S.W.3d at 638 (citing TEX. R. EVID. 901(a)). "The trial court should admit proffered evidence 'upon, or subject to the introduction of evidence sufficient to support a finding of' authenticity." *Id.* (citing TEX. R. EVID. 104(b)). "The ultimate question whether an item of evidence is what its proponent claims then becomes a question for the fact-finder—the jury, in a jury trial." *Id.* The standard of admissibility under authentication is a liberal one. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015) (citing Cathy Cochran, TEX. R. EVID. HANDBOOK 922 (7th ed. 2007–08)).

"Video recordings without audio are treated as photographs and are properly authenticated when it can be proved that the images accurately represent the scene in

4

question and are relevant to a disputed issue." *Fowler*, 544 S.W.3d at 849.

**B.      Application**

The issue before us places two standards against each other: (1) the trial court's wide latitude and accompanying deference on rulings on the admissibility of evidence; and (2) the liberal standard for authenticating evidence prior to admission. *Compare Wells*, 611 S.W.3d at 427, *with Butler*, 459 S.W.3d at 600.

The majority notes neither the rules of evidence nor case law require an entire recording be offered into evidence for it to be admissible. While I agree that the rules do not require the *complete* footage, the case law does require that the proponent of the evidence "prove[] that the images accurately represent the scene in question" in order for it to be admissible. *Fowler*, 544 S.W.3d at 849. The majority summarily concludes that the State need only prove that "Duran's cell phone video recording accurately represent[s] those portions of the original surveillance footage which he chose to record." In doing so, the majority implies that the "scene in question" is not the scene that the original surveillance footage depicts, but rather the scene that the cell phone video depicts. Thus, the majority does not consider whether the portions recorded accurately represent the scene depicted by the surveillance footage. I would hold that, similar to requiring exceptions for multiple layers of hearsay, when the evidence contains multiple layers of video footage, each layer of footage needs to be authenticated. *See* TEX. R. EVID. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if *each part* of the combined statements conforms with an exception to the rule.") (Emphasis added). Based on the majority's holding, if a proponent of evidence who could not authenticate particular

footage records that footage with their cell phone, the trial court would not be able to consider whether the underlying footage "accurately depicts the scene in question" In determining whether to admit the second recording. *See Fowler*, 544 S.W.3d at 849.

In support of their decision, the majority relies on *Robinson v. State* to conclude that completeness goes to the weight of the evidence not its admissibility. 739 S.W.2d 795, 802 (Tex. Crim. App. 1987) (per curiam). However, *Robinson* analyzes the admissibility of a "pen packet" under former Texas Rules of Criminal Evidence (replaced by the 1998 Texas Rules of Evidence). *See id.*; *Ford v. State*, 305 S.W.3d 530, 542 (Tex. Crim. App. 2009) (Price, J., concurring) (noting that the Texas Rules of Criminal Evidence are now defunct and not carried over to the Texas Rules of Evidence). In *Robinson*, the court of criminal appeals stated that complaints about the accuracy of copies go to the weight of the evidence, not its admissibility. *Robinson*, 739 S.W.2d at 802*. Accordingly, it is inapplicable to silent videos as held by *Fowler*, which requires the proponent prove the accuracy of a silent video to authenticate it prior to admission. *See Fowler*, 544 S.W.3d at 846. The majority also cites two unpublished opinions that relied on *Robinson* to support their conclusion. *Compare Rocha v. State*, No. 05-18-00161-CR, 2019 WL 1467964, at *7 (Tex. App.—Dallas Apr. 3, 2019, pet. ref'd) (not designated for publication) (holding that appellant's complaints about accuracy or completeness go to weight not admissibility); and *Manis v. State*, No. 05-08-00459-CR, 2009 WL 1815468, at *10 (Tex. App.—Dallas June 26, 2009, no pet.) (mem. op.) (not designated for publication) (same), *with Fowler*, 544 S.W.3d at 849. Because of their mistaken reliance on *Robinson*, I do not find these cases to be instructive. *See Rocha*, 2019 WL 1467964, at *7; *Manis*, 2009 WL

1815468, at *10; *see also* TEX. R. APP. P. 47.7.

In the present case, the cell phone footage offered by the State includes a near three-hour gap in the original surveillance footage. When offering the cell phone footage as an exhibit, the State failed to offer any evidence explaining the large gap in footage. Further, Duran testified that he only recorded "[t]he portion that showed a crime being committed." However, the trial court "may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted." *Ross*, 32 S.W.3d at 855. Accordingly, the trial court was free to disbelieve Duran's testimony and instead conclude that Duran intentionally excluded portions of the footage that may have exonerated Martinez, and thus, the video did not accurately represent the scene in question. *See id.*; *Fowler*, 544 S.W.3d at 849.

The majority concludes that the first layer of surveillance footage was authenticated because "it is undisputed that the surveillance footage accurately represented the scenes, in the evidence storage room and elsewhere, which it purported to depict." I disagree. The trial court made no such finding and Martinez specifically requested "the [trial court] conduct an evidentiary hearing relating to whether any [o]fficer or Sullivan City personnel knowingly or intentionally tampered with or destroyed evidence relating to the original videotape." When no findings of fact or conclusions of law are made by the trial court, "we must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). The majority relies on uncontroverted testimony from Duran that his video recording accurately represented

7

those portions of the original surveillance footage which he chose to record. Duran further testified that he recorded "[t]he portion that showed a crime being committed." However, the trial court "is entitled to believe or disbelieve all or part of the witness's testimony—even if that testimony is uncontroverted—because [it] has the opportunity to observe the witness's demeanor and appearance." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

Although the initial standard for authentication is a liberal one, *see Butler*, 459 S.W.3d at 600, the State was still required to authenticate the video as a prerequisite to admissibility. *Tienda*, 358 S.W.3d at 638. Because the cell phone video contains a near-three-hour gap in footage and the State failed to offer an explanation, the trial court could have reasonably concluded that the footage did not "accurately represent the scene in question." *See Fowler*, 544 S.W.3d at 849; *cf. Watson v. State*, 421 S.W.3d 186, 192 (Tex. App.—San Antonio 2013, pet. ref'd) (concluding the proper predicate was laid under Rule 901(a) where "[t]he tape was *continuous and uninterrupted*, [and] the officers corroborated specific items in the recorded video.") (emphasis added). As such, I believe the trial court's decision falls within the zone of reasonable disagreement and should not be disturbed. *Martinez*, 348 S.W.3d at 922. I would overrule the State's sole issue and affirm the trial court's ruling.

I do agree with the majority that the other grounds raised by Martinez were not developed by testimony at the hearing and are not applicable to the case. Specifically, silent videos do not contain testimonial statements and would thus not violate the confrontational clause. *See Watson*, 421 S.W.3d at 196. Further, the video does not

contain any oral or written expressions or nonverbal conduct intended to substitute verbal expression and would thus not constitute hearsay. *See* TEX. R. EVID. 801(a); *Watson*, 421 S.W.3d at 196. Finally, there is no evidence that the State acted in bad faith, which would be necessary to suppress evidence based on a violation of due process. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.").

## IV. CONCLUSION

I would affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
20th day of January, 2022.