**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00342-CR**
_____

**CHRISTOPHER MARC COGAR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 1A District Court**
**Jasper County, Texas**
**Trial Cause No. 13497JD**

**MEMORANDUM OPINION**

A grand jury indicted Appellant Christopher Marc Cogar for possession of methamphetamine, a controlled substance, in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.115(d). Cogar pleaded not guilty, but a jury found Cogar guilty and assessed punishment at ten years' imprisonment. In a single issue, Cogar challenges the sufficiency of the evidence to support his conviction. We affirm.

1

Evidence at Trial

Testimony of Trooper Caden Hunt

Caden Hunt, a trooper with the Department of Public Safety (DPS), testified that he was on patrol on February 24, 2018, and stopped a vehicle for an expired registration sticker. Hunt recognized Cogar as a passenger in the vehicle. According to Hunt, Cogar asked if he could leave because he worked "next door" and he was late to work, and Hunt agreed to let Cogar go. Hunt further testified that he found it "suspicious" that Cogar was in a hurry to leave, and Hunt learned from the Sheriff's Office that there were two outstanding warrants on Cogar for traffic violations.

When Hunt had completed the traffic stop, he walked to the business where Cogar was working, he arrested Cogar for the two traffic warrants, and he drove Cogar to the Jasper County Jail. Hunt testified that Cogar was "[v]ery hesitant" to go to jail and he regarded Cogar's reluctance as "kind of extreme." Hunt also testified that he patted Cogar down before placing him in the patrol car. Hunt recalled that Cogar had asked to leave his backpack with his mother, and Hunt stopped at a store on the way to the jail so Cogar could give his mother his backpack.

Hunt testified that he released Cogar to the Jasper County jail staff and he later received a phone call from Jailer Self telling Hunt that the jail found some contraband on Mr. Cogar while "dressing him out[]" and saying that methamphetamine had been found. Hunt further testified that he went back to the

2

jail and he sealed it and marked the evidence package with his initials and later he mailed the evidence to the Houston DPS Crime Lab for analysis. Hunt recalled that the field weight of the substance was found to be 8.5 grams.

Hunt recognized State's Exhibits 2 and 3 as videos taken from his dashcam and body camera that day, and he agreed they are accurate representations of what happened that day. The videos were published to the jury.

Testimony of Jailer Michael Self

Michael Self, a jail supervisor at the Sheriff's Office, testified that he had worked at the Sheriff's Office for thirteen and a half years and that he was working when Hunt brought Cogar to the jail to be booked on traffic warrants. Jailer Mike Self testified that part of his duties at the jail are to "dress out" prisoners—that is, to have the person take off their personal clothes and put on a jail uniform. Self testified about Cogar's dress-out:

> . . . When I took him into the room, [I] told him to go ahead and remove his -- his clothing and at which time he removed his shirt and then was hesitant.
> He then began to remove his right shoe and stated that he needed to speak with an officer. Well, the officer that had brought him in had already left and I had proceeded with the dress out procedure and when he removed his shoe, that's when I noticed there was a clear baggie laying on the floor. . . .
> . . . .
> When I [saw] the clear baggie, I told him to step back; and he didn't want to step back, he didn't want to move his left foot. So I stepped forward toward him and had him step back. I reached down to get the shoe and the baggie that he had just taken off, and that's when I

3

noticed that there was an additional baggie that he was trying to conceal with his left foot.

I wasn't -- I didn't see anything in the baggie until after I got the -- got it out from under his foot and I just grabbed it all and just held it behind my back until he was finished dressing out and then I exited the room with him and then I took the stuff that I recovered to the book in area[.]

Self testified that one of the baggies contained a clear crystalline substance. According to Self, Cogar also made spontaneous statements about how people bring drugs into the jail, stating that "he wanted to speak with an officer again and then he told me that 'I'll let you know there -- where -- how they conceal it.' He said, 'They conceal it in their shoes.'" Self took the baggies to the book-in area and notified Trooper Hunt.

Testimony of Forensic Scientist Veronica Pando

Veronica Pando, a forensic scientist with the DPS Crime Lab in Houston, testified that she analyzes substances submitted for identification. Pando identified State's Exhibit 1 as an envelope containing evidence she had analyzed, she recognized her initials and the date written on the seal that she applied after her analysis, and she agreed that markings on the envelope identified it as related to Cogar's case. Pando agreed that she analyzed the contents of State's Exhibit 1 and the presumptive and confirmatory test results on the substance were positive for methamphetamine. According to Pando, the net weight of the substance was 4.14 grams. Pando identified State's Exhibit 4 as a copy of her report on the analysis in

4

this case, which also reflected that the net weight of the substance was 4.14 grams and identified the substance as methamphetamine. On cross-examination Pando agreed that her report indicated "All uncertainty values reported as '+/-' are at the 95% confidence level."

## Issue

Appellant argues that the evidence is not legally sufficient to support his conviction because there is no independent evidence to support the testimony of the witnesses. According to Appellant, the evidence supporting the verdict amounts to speculation and is "purely circumstantial." Appellant further argues that he had ample opportunity "to remove his shoe and dump the contraband inside of the patrol car[,]" but that Trooper Hunt found no contraband on him prior to placing him in the patrol car, and neither Hunt nor Jailer Self saw Cogar in possession of the contraband.

Appellant also argues that the baggie containing drugs was not fingerprinted and that there are chain-of-custody issues with the baggie. In addition, Appellant argues that the forensic analyst who tested the substance only weighed it once and because of "the uncertainty of measurement," there is only a 95% confidence level for the weight obtained. For these reasons, Appellant argues that the evidence is insufficient to show beyond a reasonable doubt that he committed the crime alleged.

Standard of Review and Applicable Law

When an appellant challenges the sufficiency of the evidence supporting a conviction in a criminal case, appellate courts consider all of the evidence in a light most favorable to the verdict and decide, after reviewing the evidence in that light, whether a rational trier of fact could have found the appellant guilty of the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We apply "only one standard" to evaluate whether the evidence is sufficient to support a criminal conviction beyond reasonable doubt and that is "legal sufficiency." *Temple*, 390 S.W.3d at 360; *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In reviewing sufficiency challenges, we are required to give the jury's findings and its conclusions deference, as it was the jury's responsibility to fairly resolve all conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to resolve whether the defendant is guilty of violating the criminal provision that is at issue at trial. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 808-09 (Tex. Crim. App. 2015)

6

(citing *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013); *Hooper*, 214 S.W.3d at 13). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13 (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

The jury, as the judge of the facts and credibility of the evidence, may choose to believe or not believe the testimony of the witnesses, or any portion of their testimony, despite any contradictory evidence. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (citing *Esquivel v. State*, 506 S.W.2d 613 (Tex. Crim. App. 1974)). "'When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination.'" *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016) (quoting *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014)). A jury is allowed to draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Temple*, 390 S.W.3d at 360.

A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses the controlled substance in the prescribed amount, by aggregate weight, including adulterants or dilutants. *See* Tex. Health & Safety Code Ann. §§ 481.102, 481.115. To prove possession, the State must prove that (1) the accused exercised control, management, or care over the substance; and

7

(2) the accused knew the matter possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). The State does not have to prove that the defendant had sole or exclusive possession of the drugs. *See Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). However, when the defendant does not have exclusive possession of the place where the contraband is found, then independent facts and circumstances must link him to the drugs. *Poindexter v. State*, 153 S.W.3d 402, 405-13 (Tex. Crim. App. 2005) (citing and quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)). Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. *Evans*, 202 S.W.3d at 161. This is called the "affirmative links" rule. *Id*. The Court of Criminal Appeals has recognized the following non-exclusive factors as tending to establish affirmative links: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place

8

where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See id.* at 162 n.12; *Black v. State*, 411 S.W.3d 25, 29 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The number of factors is not as important as the logical force they collectively create to prove that a crime has been committed. *Evans,* 202 S.W.3d at 162; *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dis.t] 2002, pet. ref'd)). Moreover, the absence of various links does not constitute evidence of innocence to be weighed against the affirmative links present. *See Wiley v. State,* 388 S.W.3d 807, 814 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd); *see also Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976) ("[T]he absence of the above facts and circumstances is not evidence of appellant's innocence to be weighed against evidence tending to connect appellant to the marihuana.").

"Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs." *Evans*, 202 at 162. However, presence or proximity, when combined with other evidence, either direct or circumstantial, can be sufficient to establish that element beyond a reasonable doubt. *Id.* Convenient access to the contraband is an accepted factor. *See Robinson*,

174 S.W.3d at 326. "Conveniently accessible" means that the contraband must be within the close vicinity of the accused and easily accessible so as to suggest that the accused had knowledge of the contraband and exercised control over it. *See id.* at 326 (citing *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex. Crim. App. 1981); *Deshong*, 625 S.W.2d at 329); *see also Gregory v. State*, 159 S.W.3d 254, 260 (Tex. App.—Beaumont 2005, pet. ref'd).

## Analysis

In this case, Jailer Self observed two baggies while "dressing out" Cogar at the jail. Self testified that Cogar appeared to be trying to conceal a baggie with his foot. Upon subsequent analysis by a DPS analyst, one of the baggies was determined to contain 4.14 grams of a substance containing methamphetamine. Here, the evidence allowed the jury to conclude that Cogar exercised care, custody, control, or management over the methamphetamine. The baggies were discovered by the jailer when Cogar was "dressing out," and Cogar appeared to be attempting to conceal the baggie with his foot. We conclude the combined and cumulative force of the evidence allowed the jury to conclude that Cogar intentionally or knowingly possessed the methamphetamine that the jailer found when "dressing out" Cogar at the jail. *See Evans*, 202 S.W.3d at 162; *see also Brooks*, 323 S.W.3d at 902 n.19.

The Jailer testified that he took the baggie to the book-in area and he notified Trooper Hunt. Hunt testified that he put the evidence in a locker and later sent it to

10

the DPS lab for analysis. Pando recognized the baggie as the evidence she received in this case, and she identified the markings she made after her analysis. On appeal, Cogar questions why the baggie was not fingerprinted. Circumstantial evidence may be sufficient to prove the chain of custody. *See Cain v. State*, 501 S.W.3d 172, 175 (Tex. App.—Texarkana 2016, no pet.); *Watson v. State*, 421 S.W.3d 186, 190 (Tex. App.—San Antonio 2013, pet. ref'd). Without evidence of tampering, most questions concerning the care and custody of a substance go to the weight of the evidence. *See Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997). And when the State shows the beginning and the end of a chain of custody, any intermediate gaps go to the weight of the evidence, particularly when the chain of custody ends at a laboratory. *See Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Gallegos v. State*, 776 S.W.2d 312, 315-16 (Tex. App.—Houston [1st Dist.] 1989, no pet.). Because circumstantial evidence may be used to prove chain of custody and may be sufficient to uphold a conviction, we find Cogar's chain-of-custody argument unavailing. *See Ramsey*, 473 S.W.3d at 808-09; *Cain*, 501 S.W.3d at 175; *Watson*, 421 S.W.3d at 190.

Pando testified that the weight of the substance she analyzed was within a 95% confidence level and that she weighed the substance once. Although Cogar raises questions on appeal about the scales Pando used, he did not question her about the scales at trial. Cogar cites to no authority that legal sufficiency requires a higher

11

confidence level for the weight of the substance. A witness's uncertainty, if any, generally goes to the weight of the testimony and is for the jury to consider. *See Garza v. State*, 633 S.W.2d 508, 511 (Tex. Crim. App. 1981); *Prihoda v. State*, 352 S.W.3d 796, 803 (Tex. App.—San Antonio 2011, pet. ref'd). And circumstantial evidence may be sufficient to uphold a conviction. *See Ramsey*, 473 S.W.3d at 808-09. Therefore, we find Cogar's argument about the confidence level of the weight of the substance in the baggie does not establish insufficiency of the evidence.

As the factfinder, the jury was the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given the testimony. *See Brooks*, 323 S.W.3d at 899; *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury may choose to believe or disbelieve any witness, or any part of a witness's testimony. *See Sharp*, 707 S.W.2d at 614. A rational jury could have determined beyond a reasonable doubt that Cogar committed the offense as alleged in the indictment. We conclude that sufficient evidence supports Cogar's conviction. We overrule Appellant's issue, and we affirm the judgment of the trial court.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on August 24, 2020
Opinion Delivered September 30, 2020
Do Not Publish
Before McKeithen, C.J., Horton and Johnson, JJ.