**AFFIRMED as MODIFIED; and Opinion Filed April 1, 2024.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-23-00306-CR**
**No. 05-23-00452-CR**

**KEVIN SCOTT CHATLEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 380-81904-2021; 380-81905-2021**

## MEMORANDUM OPINION

Before Justices Nowell, Miskel, and Kennedy
Opinion by Justice Kennedy

On our own motion, we withdraw our February 28, 2024 memorandum opinion, vacate our judgment of same date, and substitute this opinion in its place.

Appellant Kevin Scott Chatley appeals his convictions for indecency with a child. In nine issues, appellant challenges various evidentiary rulings of the trial court, and he asserts the trial court failed to properly instruct the jury and erred in assessing duplicative costs. As modified, we affirm the trial court's judgments. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

In two indictments, appellant was charged with five counts of indecency with a child by sexual contact, each a second-degree felony. TEX. PENAL CODE § 21.11(a)(1), (e). Three of the counts involved complainant B.W., and two of the counts involved complainant H.P. Appellant pleaded not guilty to all five counts, and the cases proceeded to trial before a jury.

At the time of the alleged offenses, appellant was 28 years old and resided in Overland Park, Kansas. Appellant's half brother lived in McKinney, Texas, and was a friend of B.W.'s and H.P.'s parents. Appellant's half brother's family hosted a party on Christmas day 2019 at their McKinney home. B.W.'s family and appellant attended that party. B.W. was 11 years old at the time. B.W. testified that at some point in the evening, he was alone with appellant in the game room. They were sitting on a bean bag chair watching TikTok videos, when appellant put his hand in B.W.'s pants and fondled him. B.W. told him to stop, and he did so. B.W. also indicated that on that occasion, appellant showed him some pornographic videos on his phone.

On New Years' Eve 2019, appellant's brother's family hosted another party at their home. Among the guests at this party were B.W.'s family, H.P.'s family, and appellant. H.P. was 13 years old at that time, and the party was the first and only time he met and hung out with appellant.

H.P. testified that at the party he found out appellant was a doctor, so he told him about a medical condition he has having with his testicles. H.P. and appellant went into the upstairs bathroom, where appellant looked at and touched H.P.'s testicles and advised H.P. to seek further medical attention. After they came out of the bathroom, it was getting close to midnight, so they joined the other guests downstairs. Later on, appellant, H.P. and B.W. went back upstairs, and appellant suggested that they go into a closet that was off of the game room. Inside the closet, appellant showed them pornography involving females on his phone, talked about masturbating, pulled his pants down, and started touching himself. Appellant then told them they should go to the attic for a little more privacy. The door that went to the attic was at the end of the closet. They went into the attic, where H.P. and B.W., at the urging of appellant, exposed themselves. Appellant was touching himself and telling H.P. and B.W. they should likewise touch themselves. Appellant touched H.P.'s and B.W.'s penises and told them to touch his. They did not want to touch him, so appellant grabbed their hands and made them do so. H.P. said appellant told him that he would hurt him if he ever told his parents what had happened. H.P. also admitted that he peed on B.W.'s back while they were in the attic, but claimed he was just joking around.

According to B.W., at the New Year's Eve party, appellant showed H.P. and him pornography while they were in the game room and everyone else was downstairs. B.W. recalled that the pornography involved both males and females.

He recalled that at appellant's suggestion they went into the closet before midnight where appellant showed them his privates. B.W. testified appellant asked him and H.P. to touch his penis and they did so. Then, at appellant's direction, he and H.P. lowered their pants, and appellant touched them. B.W. indicated he and H.P. then played in the attic. B.W. testified he did not tell anyone what had happened until his father questioned him because appellant told him not to tell.

B.W.'s family spent the night at appellant's brother's home, and H.P.'s family went home. According to B.W., as he was going to sleep on the bean bag chair in the game room, appellant came upstairs and scratched his back. B.W. felt uncomfortable and asked appellant to stop.

After the New Year's Eve party, appellant stayed in touch with both boys. He texted B.W. and contacted H.P. via Snapchat, a social media application. H.P. testified that the Snapchat messages eventually became sexual. Appellant would ask H.P. how often he would masturbate and if he would ejaculate. Appellant sent pictures of his penis and of ejaculated sperm and videos of him masturbating. Appellant requested photos and videos of H.P. masturbating. H.P. sent appellant videos of himself masturbating, and he and B.W. sent appellant a photo of their penises.

According to B.W., appellant sent H.P. videos of himself masturbating and ejaculating. B.W. said he and H.P. sent appellant a picture of their penises only after appellant requested one.

Two or three months after the New Year's Eve party, H.P. told his father some of what had happened at the party. His father called B.W.'s father and apprised him of what H.P. said transpired. B.W.'s father asked B.W. if there was anything he wanted to talk about in regard to the New Year's Eve party and appellant. B.W. told his father that he, H.P. and appellant went into a storage closet upstairs, where they exposed themselves and "participated in kind of like masturbation." B.W. told his father that appellant touched his penis. He then told his father that, on Christmas Day, appellant had reached down into his pants and "fondled" him.

H.P. and B.W. were then interviewed at the Collin County Children's Advocacy Center. During his interview, H.P. drew a picture of the second floor of appellant's brother's house and identified where they watched pornography and where appellant touch his penis.

After the interviews, McKinney Police Detective Jennifer Grounds secured an arrest warrant for appellant. At her request, Detective Christopher Moore of the Overland Park, Kansas Police Department executed the warrant and arrested appellant at his home in Kansas on April 3, 2020, and seized his cell phone. Detective Moore obtained the passcode for the phone from appellant and sent the phone to Detective Grounds by certified mail. She then obtained a search warrant for the phone and extracted information from it, including text messages. Detective Grounds found text messages between B.W. and appellant, but there were no pictures

in the messages. She did not recall seeing any pornography in the search history from appellant's phone for December 31, 2019.

Based on information from the phone and from H.P.'s parents, Detective Grounds eventually got search warrants for Snapchat and Discord records for accounts she believed belonged to appellant. Because Snapchat images typically disappear after they are viewed, Detective Grounds did not receive any records from Snapchat to present as evidence of extraneous offenses at trial in this case.

Before trial, the State gave notice of its intent to introduce the Discord and text-message records as extraneous-offense evidence. During the guilt–innocence phase of appellant's trial, the State introduced evidence that appellant had committed the extraneous offenses of online solicitation of a minor and possession of child pornography. More particularly, the State introduced messages and files that appellant exchanged with two different usernames on the Discord social media application, which will be referred to herein as username 1 and username 2, as evidence of online solicitation of a minor. Appellant's communications with username 1 are contained in State Exhibits 1 and 2, and his communications with username 2 are contained in State Exhibits 4 and 5. In addition, the State introduced text messages and photos that appellant exchanged with two different contacts in his phone, which will be referred to herein as contact 1 and contact 2, as evidence of possession of child pornography. Appellant's communications with contact 1 are contained in State Exhibit 7 and his communications with contact 2 are contained in

–6–

State Exhibits 8, 9 and 10.[1]  Before the State introduced this evidence, at appellant's request, the court held a hearing outside the jury's presence to determine whether the Discord and text messages were admissible under article 38.37, section 2 of the Texas Code of Criminal Procedure.

At the hearing, Detective Grounds testified that "some" of the Discord records "dealt with [appellant] talking with potentially underaged children."  State's Exhibits 1 and 4 were spreadsheets obtained from Discord that included, among other things, usernames, message contents, attachments, and time stamps.

State's Exhibit 1 was an exchange between username "kevbot#0337" and username 1, while Exhibit 2 was a picture attached to one of the messages sent by "kevbot#0337."   Detective Grounds identified "kevbot#0337" as appellant's username on Discord.  She obtained his username from the Discord app on his phone.  State's Exhibit 4 was an exchange between username "kevbot#0337" and username 2, while Exhibit 5 was a picture attached to one of the messages sent by "kevbot#0337."

Appellant objected to Exhibits 1, 2, 4, and 5 asserting they were not admissible under article 38.37, section 2 because the State had presented no evidence that username 1 or username 2 were "minors," or that any of the messages were sent or

---

[1] State Exhibits 8 and 9 are the same text message in different formats.  Exhibit 10 is a picture of a penis that Detective Grounds described as belonging to a child.

received in Texas.[2]   The court overruled appellant's objections and found that Exhibits 1, 2, 4, and 5 were adequate to support a jury finding that the defendant committed the offense of online solicitation of a minor, or attempted online solicitation of a minor, beyond a reasonable doubt.[3]   Then the trial judge "withdr[e]w" his finding and said that he would make the finding when the exhibits were introduced during trial because the rule requires that a finding be made when the evidence is introduced and because there may be additional evidence that supports those documents.

When the exhibits were offered into evidence during trial, the court overruled appellant's objections and admitted exhibits 1, 2, 4 and 5 as evidence that appellant committed an offense under Section 33.021 of the penal code, namely online solicitation of a minor or attempted solicitation of a minor and exhibits 7 through 10 as evidence he committed an offense under Section 43.26 of penal code; namely, possession of child pornography or attempted possession of child pornography.

Through State Exhibit 1 and Detective Grounds' testimony, the State established that the following exchange occurred between kevbot#0337 and username 1 via Discord on December 21, 2019:

kevbot#0337:      So have you started getting much bigger there yet[?]
. . .

---

[2] Appellant argued that these extraneous offenses were inadmissible because the State could not prove that either appellant or the recipients of his messages were physically located in the State of Texas when the conduct occurred.  Based on this, appellant argued that his conduct could not constitute "committing an offense" under Texas law because the State lacked territorial jurisdiction over his conduct.

[3] The trial court did not make a finding at the hearing on Exhibits 7 through 10.

| | |
|---|---|
| username 1: | I don't know[.] |
| kevbot#0337: | Well, Has it gotten any bigger[?] |
| username 1: | No clue[.] |
| kevbot#0337: | Lol. Have you got much hair there? |
| username 1: | I'm uncomfortable[.] |
| kevbot#0337: | That's fine[.] |
| username 1: | No it's not[.] |
| kevbot#0337: | Sorry little bro[.] |
| . . . | |
| username 1: | Too many weird questions about my dick[.] |
| kevbot#0337: | Got it.  Sorry bro.  I just don't care.  If you were really my bro you would see me walking around naked a lot lol[.] |
| username 1: | [symbol] But you're also kind of my dad[.] |
| . . . | |
| kevbot#0337: | Its just a dick.  You should feel free to ask me whatever about it and but [sic] feel embarrassed[.] |
| . . . | |
| username 1: | I guess Im like a five or four[.] |
| kevbot#0337: | Inches? |
| username 1: | Yeah[.] |
| kevbot#0337: | That's not bad at all bro[.] |
| username 1: | Alright[.] |
| kevbot#0337: | Its but.  You'll keep getting bigger[.] |
| username 1: | Gotcha[.] |
| username 1: | All I know is that I got a bunch of pubes[.] |
| kevbot#0337: | Especially if you're anything like your brodad[.] |

The conversation then turned to the amount and location of pubic hair and then appellant indicated username 1 could take a picture if he wanted him to see, and username 1 responded, "no Im fine".  About twelve hours later, the following exchange occurred:

| | |
|---|---|
| username 1: | Can i see a picture of you? |
| kevbot#0337: | If I can see one of you too[.] |
| username 1: | Sure[.] |
| kevbot#0337: | Cool then yea[.] |

kevbot#0337:  [blank][4]

The exchange continued:

username 1:  Cute [not going to lie.]
kevbot#0337:  Thanks bro[.]
username 1:  [blank]
kevbot#0337:  You too[.]
username 1:  Thanks[.]
kevbot#0337:  Did you wanna see anything else[?]
username 1:  Nah, its cool[.]

Detective Grounds testified that there was a file attached to the blank message from username 1, but she did not have a copy of that file and did not know what it was. She said that the conversation then turned to "cuddling" and sexual matters and State Exhibit 1 contained the following exchange:

username 1:  We don't have ac here, we use the fireplace and space heaters[.]
kevbot#0337:  Oooo  damn. You need someone to cuddle with lol[.]
username 1:  no[.]
kevbot#0337:  Lol. Just up warm up I'm saying[.]
username 1:  Ik i just don't like cuddling too much[.]
kevbot#0337:  How come[.]
username 1:  I only cuddle with my cat[.]
kevbot#0337:  You're my little bro. I would keep you warm[.]
username 1:  Makes sense[.]
kevbot#0337:  What do you wear to bed[.]
username 1:  A pair of shorts and a t-shirt[.]
kevbot#0337:  O nice. I usually just wear boxers[.]
username 1:  Cool, i would get cold[.]
kevbot#0337:  Not if I was with you[.]
username 1:  Go into detail?
kevbot#0337:  I'd hold you and keep you warm against my chest, arms wrapped around you[.]

---

[4] The blank message from "kevbot#0337" had a picture of appellant attached to it, which was State's Exhibit 2.

–10–

| | |
|---|---|
| username 1: | Cute, i would most likely wrap myself around you[.] |
| kevbot#0337: | I know doesn't seem to make sense, but we would get warm quicker if we didn't wear anything[.] |
| username 1: | Body heat it makes sense[.] |
| kevbot#0337: | Exactly[.] |
| kevbot#0337: | I'd hold you tight[.] |
| username 1: | Mhm, id sleep[.] |
| username 1: | Anything else? |
| kevbot#0337: | Would you wanna be resting on my chest or on your side with your back to me[?] |
| username 1: | On my Side with my back to you[.] |
| kevbot#0337: | Perfect. You'd feel my junk against you. That ok? |
| username 1: | I guess, its just a dick[.] |
| kevbot#0337: | Yea. It would probably be right against your ass[.] |
| username 1: | Oh[.] |
| username 1: | Okay[.] |
| kevbot#0337: | Just laying that way. That ok? |
| username 1: | Yeah[.] |
| kevbot#0337: | It might get stiff occasionally too[.] |
| username 1: | It happens[.] |
| kevbot#0337: | Yea. Yours probably would too[.] |
| username 1: | Alright[.] |
| kevbot#0337: | That would be nice rn[.] |
| username 1: | Rn? |
| kevbot#0337: | Right now[.] |
| username 1: | Ik, but why rn? |
| username 1: | Cold? Hard? |
| kevbot#0337: | Both[.] |
| kevbot#0337: | You? |
| username 1: | I'd be asleep. Would you be willing to fuck me? I'm sorry it just came up in my Mind[.] |
| kevbot#0337: | If you wanted[.] |
| username 1: | Maybe[.] |
| kevbot#0337: | It would just be between us. And we could go slow, maybe just feel each other and stroke the first time[.] |
| username 1: | Alright[.] |
| kevbot#0337: | You hard? |
| username 1: | no[.] |
| kevbot#0337: | O ok[.] |
| username 1: | Mhm[.] |
| kevbot#0337: | Maybe we should see what each other has[.] |

| | |
|---|---|
| username 1: | What? |
| kevbot#0337: | Like maybe we should see more of each other, with less on[.] |
| username 1: | no[.] |
| username 1: | Sorry[.] |
| kevbot#0337: | That's ok[.] |
| username 1: | Mhm[.] |
| kevbot#0337: | Would you want me to fuck you like how we were cuddling[?] |
| username 1: | Maybe[.] |
| kevbot#0337: | Cool[.] |
| username 1: | Ye[.] |
| kevbot#0337: | Would go slow.  Playing with yours while I do[.] |
| username 1: | Do you want to[?] |
| kevbot#0337: | As long as you do[.] |
| username 1: | No I mean like, given me an answer, yes or no? |
| kevbot#0337: | If you want to, yes[.] |
| . . . | |
| kevbot#0337: | I don't wanna do anything you wouldn't wanna do[.] |
| username 1: | Alright[.] |
| kevbot#0337: | But yes.  Do you? |
| username 1: | Sure? |
| kevbot#0337: | Lol.  Yes or no[?] |
| username 1: | *1[.] |

Detective Grounds next testified that State's Exhibit 4 was a Discord exchange between "kevbot#0337" and username 2.  Detective Grounds told the jury that appellant and username 2 exchanged messages on Discord between August and November 2019.  On August 4, the following exchange took place.

| | |
|---|---|
| username 2: | yo[.] |
| kevbot#0337: | What's up[?] |
| username 2: | when u getting on[.] |
| kevbot#0337: | When you send that pic[.] |

The rest of the communication that day was about computer games.  At the end of September, the conversation became sexual in nature.

| | |
|---|---|
| username 2: | bitch[.] |
| kevbot#0337: | lol what[?] |
| username 2: | bitch[.] |
| kevbot#0337: | You want me to be your bitch or something[?] |
| username 2: | nah i dont need any more[.] |
| kevbot#0337: | Your hand is enough? |
| username 2: | i didnt expect that xD[.] |
| kevbot#0337: | What for being a smart ass back? |
| username 2: | ima play Minecraft[.] |
| kevbot#0337: | Always good[.] |
| username 2: | or something else[.] |
| kevbot#0337: | Or what[?] |
| username 2: | or play a different game[.] |
| username 2: | WHY CANT I OPEN STEAM[.] |
| kevbot#0337: | It was having issues earlier[.] |
| username 2: | it still is[.] |
| kevbot#0337: | But it was working a few minutes ago[.] |
| kevbot#0337: | Just go jackoff instead[.] |
| username 2: | why?? |
| kevbot#0337: | Why not[?] |
| username 2: | cause i dont want to[.] |
| kevbot#0337: | Then don't[.] |
| username 2: | I planned on that[.] |
| username 2: | ima play fagnite cause im a faggot[.] |
| kevbot#0337: | Lol. Prove it[.] |
| username 2: | prove what[?] |
| username 2: | that im playing fangite[?] |
| kevbot#0337: | That you're a faggot[.] |
| username 2: | nah[.] |
| kevbot#0337: | Lame ass[.] |
| username 2: | oh okay[.] |
| kevbot#0337: | Lol. Snap[.] |
| username 2: | what about it[.] |
| kevbot#0337: | Send them[.] |

A month and a half after that, on November 15, username 2 indicated that he was 15 years old, but appellant kept the exchange going:

| | |
|---|---|
| username 2: | ';lur a fag[.] |
| kevbot#0337: | I mean I want your cock... So... |

–13–

| | |
|---|---|
| username 2: | thats how u catch a case[.] |
| kevbot#0337: | Catch a case? |
| username 2: | u dumb? |
| kevbot#0337: | Maybe[.] |
| username 2: | yuh is only 15[.] |
| username 2: | and u are like 500[.] |
| username 2: | bish nibba[.] |
| kevbot#0337: | Lol. False. But snap me loser[.] |
| username 2: | buy me a game bitch[.] |
| kevbot#0337: | Come visit and I will[.] |
| username 2: | where u be at baby[.] |
| kevbot#0337: | You know you like me anyways. Don't lie[.] |
| kevbot#0337: | Kansas City[.] |
| username 2: | nah to far[.] |
| kevbot#0337: | Be my bf[.] |
| kevbot#0337: | No one else needs to know[.] |
| username 2: | i dont think my girlfriend would approve[.] |
| kevbot#0337: | She wouldn't need to know[.] |
| username 2: | im on ft with her rn[.] |
| kevbot#0337: | She still wouldn't need to know[.] |
| username 2: | but she already does[.] |
| kevbot#0337: | Lol how[.] |
| kevbot#0337: | You know you wanna be my bf in secret[.] |
| username 2: | i think id rather fuck my girlfriend then u[.] |
| kevbot#0337: | I would give you better head. And make you cum harder. Plus I'd be just as horny as you and want to more[.] |
| kevbot#0337: | And, you know you like me[.] |

Then, according to Detective Grounds, the discussion turned to pictures:

| | |
|---|---|
| kevbot#0337: | You hard? |
| username 2: | yeah u know it[.] |
| kevbot#0337: | Let's see on snap[.] |
| kevbot#0337: | Or here[.] |
| username 2: | [blank] |
| kevbot#0337: | Send it on snap[.] |
| username 2: | why[?] |
| kevbot#0337: | Cause it's better quality[.] |
| username 2: | nah[.] |
| kevbot#0337: | Come on. Or send a video[.] |
| username 2: | naah fam u send[.] |

kevbot#0337:     [blank]

According to Detective Grounds, there was an attachment to the blank message from username 2, but she did not have it and did not know what it was. Attached to the blank message from appellant was a picture of appellant's erect penis. The exchange continued:

username 2:     ðŸ¤¢ ðŸ¤®
kevbot#0337:     You like it[.]
kevbot#0337:     Send a real one of yours[.]
username 2:     i kinda cant rn[.]
kevbot#0337:     Why[?]
username 2:     cause my gf is riding my dick[.]
kevbot#0337:     Show me[.]
username 2:     this is a memory for us not for u and us CAUSE PERIOD!!!!!!!
kevbot#0337:     Lol ok. Just be hot to see you fuck her[.]
username 2:     and i oop[.]
kevbot#0337:     It would be[.]
kevbot#0337:     Plus. I don't think you really are rn[.]
username 2:     how would u know[?]
kevbot#0337:     I wouldn't. But you're messaging on here[.]
username 2:     we keep pausing for me to respond to u[.]
kevbot#0337:     Lol. Sure you do[.]
username 2:     on our relationship[.]
kevbot#0337:     Lol. I don't believe you[.]
username 2:     fack off[.]
kevbot#0337:     Lol. You know I'm right[.]
username 2:     byeeee[.]
kevbot#0337:     Don't leave me babe[.]
username 2:     dont call me babe[.]
kevbot#0337:     You called me it earlier[.]
username 2:     yeah as a joke xD[.]
username 2:     im going to bed[.]
kevbot#0337:     Lol. I know[.]
kevbot#0337:     Let me see you first[.]
username 2:     nah to tired[.]
kevbot#0337:     Tomorrow?

kevbot#0337: I like seeing you[.]

Twelve hours later, the exchange resumed with username 2 asking for a video game and appellant asking for pictures and videos:

username 2: u should buy me the new modern warfare[.]
kevbot#0337: You should actually show me[.]
username 2: u should buy me the new modern warfare[.]
kevbot#0337: If I did, then you would be mine for real[.]
username 2: wym by be mine[?]
kevbot#0337: Send me pics of whatever, videos, be my "bf"[.]
username 2: bruv how old are u[?]
kevbot#0337: You've seen me. Your at least attracted to me[.]
username 2: im attracted to u[.]
username 2: im not tho[.]
kevbot#0337: What does that mean[.]
username 2: u said im attracted to u when im not[.]
kevbot#0337: Sure[.]
username 2: buy me the new modern warfare xD[.]
kevbot#0337: Lol why[?]
username 2: cause yuh boy is tried of playing bf5[.]
username 2: i need something new[.]
kevbot#0337: My boy never sends me anything[.]
username 2: cause yuh boy is 15[.]
kevbot#0337: You still could on snap[.]
username 2: how old are u[?]
kevbot#0337: Why[?]
username 2: jw[.]
kevbot#0337: It doesn't matter though. If you don't want to, it's fine. But I'm not buying you a game[.]
username 2: damn can a person not wonder what ur age is[?]
kevbot#0337: Lol.
username 2: u know my age[.]
kevbot#0337: I didn't ask[.]
username 2: yeah but i still told u[.]
kevbot#0337: True. But still[.]
username 2: oml just fucking tell me[.]
kevbot#0337: Lol. Nah. Don't want you to somehow use it against me[.]
username 2: bruv[.]

Detective Grounds testified that State's Exhibit 7 was a text conversation between appellant's cell phone and a phone number saved in appellant's phone that we refer to herein as contact 1. The following exchange took place:

| | |
|---|---|
| contact 1: | Ok. Promise[.] |
| appellant: | Good[.] |
| contact 1: | Yea[.] |
| appellant: | How old are they[?] |
| contact 1: | 14, 14, 15, 12, 11[.] |
| contact 1: | Young. Lol[.] |
| appellant: | Lol. How young[?] |
| contact 1: | I just said. Haha[.] |
| appellant: | O nice. The guys 14 14 and 15? |
| contact 1: | No, girls. The guys are 12 and 11[.] |
| appellant: | Ooo.. nice. Not even hit puberty yet[.] |
| contact 1: | Lol ikr[.] |
| appellant: | Lol. Kinda wonder if they even have pubes yet[.] |
| contact 1: | Lol omg[.] |
| appellant: | Lol. They need to learn how to j/o[.] |
| contact 1: | Lol ok[.] |
| appellant: | Lol they do[.] |
| contact 1: | Ok. Haha[.] |
| appellant: | Lol I'd teach them[.] |
| appellant: | [blank] |
| contact 1: | Omg. Haha[.] |
| appellant: | Lol might as well. They would be impressed with mine at least[.] |
| contact 1: | Ok. Haha[.] |
| appellant: | Lol. You are[.] |
| contact 1: | O hush[.] |
| appellant: | Lol. You know I'm right[.] |

Next, Detective Grounds testified that State's Exhibits 8 and 9 were a text conversation between appellant's phone and contact 2, and that State's Exhibit 10 contained two photos from the conversation, including a single photo of a penis. The text conversations were as follows:

| | |
|---|---|
| appellant: | Hey it's Kevin[.] |
| contact 2: | Heyy[.] |
| appellant: | Whose that[?] |
| contact 2: | A dude I kind of like[.] |
| appellant: | And you kissed lol[.] |
| contact 2: | Yes[.] |
| appellant: | Are you out to people[.] |
| contact 2: | No[.] |
| appellant: | Cool. Same. How did that happen then[.] |
| contact 2: | Well he kissed me and took a pic[.] |
| appellant: | Lol. But how did he know you would want to[.] |
| contact 2: | I told him[.] |
| appellant: | Ooo cool. Why don't you date him[.] |
| contact 2: | He's dating my ex girlfriend[.] |
| appellant: | Oooo.  He's bi? |
| contact 2: | Yes me too[.] |
| appellant: | Me to y Too* |
| contact 2: | Lol[.] |
| appellant: | Threesome with a girl and you would be hot[.] |
| contact 2: | Yes[.] We should have a threesome when we meet[.] |
| appellant: | Idk. I kinda wanna just have you at first[.] |
| contact 2: | Yea same[.] |
| appellant: | Like take you on a date. End up in bed with you. |
| appellant: | We have plenty of time to have threesomes after. But first I just want you. |
| contact 2: | Yes[.] Can I be honest[.] |
| appellant: | Go for it[.] |
| contact 2: | I'm 14[.] |
| appellant: | Like I said, I'm fine with it as long as you are[.] |
| contact 2: | Ok[.] |
| appellant: | Have you been with anyone? |
| contact 2: | Yes[.] |
| appellant: | Idc if not Guys or girls[.] |
| contact 2: | Both[.] |
| appellant: | All the way? |
| contact 2: | Yes[.] |
| [image sent][5] | |
| appellant: | Damn. You have a nice cock[.] Sorry I'm still at work[.] |

---

[5] Detective Grounds testified this image, depicted in State Exhibit 10, was sent from contact 2 to appellant and was a picture of a child's penis.

| | |
|---|---|
| contact 2: | Thx[.] Lol[.] |
| appellant: | I'll send a saved pic on snap. That cool? |
| contact 2: | Yea[.] |
| appellant: | Did you get it[.] |
| contact 2: | Oh yeah hold on[.] I'm watching Netflix lol[.] |
| appellant: | Cool[.] |

The State's remaining witnesses were B.W.'s father, who testified as an outcry witness, Detective Chris Meehan, who testified about digital forensics, and Eligio Molina, a forensic interviewer, who testified about the interview process and his interview of H.P. Appellant called Dr. Aaron Price, who practices in forensic mental health, to testify about sex offenders and their behavior patterns and about false allegations.

The trial court gave the jury its charge, and the jury returned a guilty verdict on each count. During the punishment phase of trial, the State's witnesses were Chris Meehan and the mother of another minor who alleged he was in a relationship with appellant. Appellant called his father to testify on his behalf. The jury assessed punishment at 20 years' confinement for each count. The trial court ordered the sentences to run concurrently. Appellant filed a motion for new trial and an amended motion for new trial. The amended motion was overruled by operation of law. This appeal followed.

DISCUSSION

## I. Evidentiary Rulings

### A. Extraneous-Offense Evidence

In his first five issues, appellant challenges the trial court's rulings on the admissibility of State's Exhibits 1, 2, 4, 5, 7, 8, 9 and 10, the extraneous-offense evidence.

Evidence of extraneous offenses is generally inadmissible to prove character conformity. TEX. R. EVID. 404(b). But in prosecutions for certain sexual offenses against children, including indecency with a child, evidence that the defendant committed sex crimes against children other than the victim of the alleged offense may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." CRIM. PROC. art. 38.37, § 2(a), (b); *Dies v. State*, 649 S.W.3d 273, 284 (Tex. App.—Dallas 2022, pet. ref'd). Before evidence may be admitted for this purpose, the State must give 30 days' notice of its intent to introduce the evidence. CRIM. PROC. 38.37, § 3. The trial court must then hold a hearing outside the presence of the jury and "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." *Id.* art. 38.37, § 2-a. "Adequate" means legally sufficient. *Romano v. State*, 612 S.W.3d 151, 159 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). At the hearing, the trial court acts as the factfinder and is the judge

of the credibility of witnesses and the weight to be given their testimony. *Deggs v. State*, 646 S.W.3d 916, 924 (Tex. App.—Waco 2022, pet. ref'd).

### 1. Territorial Jurisdiction

In his first two issues, appellant asserts the trial court erred in admitting the Discord and text messages under article 38.37. Appellant contends that evidence of extraneous offenses is admissible under article 38.37, section 2 only if Texas would have territorial jurisdiction over the separate offenses. *See* PENAL § 1.04(a) (addressing territorial jurisdiction over offenses). Appellant acknowledges that there is no authority, persuasive or binding, to support this assertion and that he is requesting that this Court adopt his reasoning as a case of first impression. For the reasons set forth herein, we decline to do so.

Appellant contends the Discord and text messages were inadmissible because the State did not prove that either he or the recipients of his messages were physically located in Texas when the messages were sent. Thus, claims appellant, the conduct could not constitute an offense under the Texas Penal Code. The State responds asserting article 38.37, section 2 does not require the State to prove that it would have territorial jurisdiction over the separate offenses, it only has to prove the conduct satisfies the essential elements of the extraneous offense as set forth in the Texas Penal Code. We agree with the State because appellant conflates the requirement that either a conduct element or a result element occurred inside the state in order for the State to have jurisdiction to prosecute an individual for the

–21–

commission of an offense enumerated in the penal code—*see* Texas Penal Code Section 1.04(a)–with article 38.37's evidentiary standards.

Statutory construction questions are questions of law that we review de novo. *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019). When interpreting statutes, we look to their literal text and attempt to discern their fair, objective meaning at the time of their enactment. *Herron v. State*, 625 S.W.3d 144, 153 (Tex. Crim. App. 2021). If the language is clear and unambiguous, our analysis ends. *Id.* Courts do not add or subtract from such a statute. *Id.*

Courts presume that the legislature used every word for a purpose and intended for the entire statutory scheme to be effective. *Id.* Thus, courts should give each word, phrase, clause, and sentence effect if reasonably possible and will not choose a construction that renders a statutory provision superfluous. *Id.*; *State v. Schunior*, 506 S.W.3d 29, 36 (Tex. Crim. App. 2016).

Article 38.37, section 2 provides:

(a) Subsection (b) applies only to the trial of a defendant for:

(1) an offense under any of the following provisions of the Penal Code:

(A) Section 20A.02, if punishable as a felony of the first degree under Section 20A.02(b)(1) (Labor or Sex trafficking of a Child or Disabled Individual);

(B) Section 21.02 (Continuous Sexual Abuse of Young Child or Disabled Individual);

–22–

(C) Section 21.11 (Indecency With a Child);

(D) Section 22.011(a)(2) (Sexual Assault of a Child);

(E) Sections 22.021(a)(1)(B) and (2) (Aggravated Sexual Assault of a Child);

(F) Section 33.021 (Online Solicitation of a Minor);

(G) Section 43.25 (Sexual Performance by a Child); or

(H) Section 43.26 (Possession or Promotion of Child Pornography), Penal Code; or

(2) an attempt or conspiracy to commit an offense described by Subdivision (1).

(b) Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

CRIM. PROC. art. 38.37, § 2.

Appellant contends that had the legislature intended that an offense occurring outside of Texas be included in article 38.37, section 2 it would have used the phrase "an offense under the laws of another state that are substantially similar" to the elements of Texas offenses as it has done on other occasions in the penal code and other statutes. The fact that the legislature did not include similar language in article 38.37, section 2 highlights the fact that to be admissible the

conduct must meet the elements of a separate offense described by the Texas Penal Code, not the laws of another state.

Section 1.04 of the Penal Code establishes the State's territorial jurisdiction. It defines the State's ability to prosecute and punish conduct. PENAL § 1.04. In the present case, the State was not trying to *prosecute* appellant for the extraneous offenses of online solicitation and possession of child pornography. Rather, the State was offering proof of these offenses pursuant to a code of criminal procedure provision that the legislature enacted to give prosecutors additional resources to prosecute sex crimes committed against children, recognizing that children often are targeted for these crimes, in part because they tend to make poor witnesses. *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.— Houston [14th Dist.] 2015, pet. ref'd) (citing Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg. R.S. (2013)). That provision merely requires legally sufficient proof that the person committed the offense as described by the Penal Code, not that the State of Texas could prosecute the individual for same. *See* CRIM. PROC. art. 38.37, § 2-a(1); *Romano*, 612 S.W.3d at 159.

When, as here, the statute is clear and unambiguous, the legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute. *See Miles v. State*, 506 S.W.3d 485, 487 (Tex. Crim. App. 2016). To require territorial jurisdiction before admitting evidence of these

offenses under article 38.37 would add language beyond that which is in the statute. Territorial jurisdiction is simply not a prerequisite to the admission of evidence of an extraneous offense under article 38.37, section 2.

Appellant contends that the court of criminal appeals' decision in *Lee v. State* supports his assertion that the State of Texas must have territorial jurisdictional over the separate offense in order for evidence concerning same to be admissible under article 38.37, section 2. 537 S.W.3d 924, 925 (Tex. Crim. App. 2017). Appellant's reliance on *Lee* is misplaced because the issue in that case was whether the commission of an out-of-state aggravated sexual assault will support a conviction for continuous sexual abuse of a child, not whether evidence of same was admissible under article 38.37, section 2. *Id.* at 925. Thus, *Lee* is not controlling and does not inform our decision here.

We conclude the trial court did not abuse its discretion in overruling appellant's objections to the Discord and text messages on territorial jurisdiction grounds. We overrule appellant's first two issues.

### 2. Rule 403 of the Texas Rules of Evidence

In his third and fourth issues, appellant contends the trial court abused its discretion in overruling his Rule 403 objections to the Discord and text messages because the danger of unfair prejudice, confusing the issues, and undue delay substantially outweighed any probative value that the messages may have had.

### a. Standard of Review

We review a trial court's ruling on the admissibility of evidence, including evidence of extraneous offenses, for an abuse of discretion. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). As long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). This is so because trial courts are usually in the best position to make the determination as to whether certain evidence should be admitted or excluded. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

### b. Applicable Law

Evidence admitted under article 38.37 is still subject to Rule 403's balancing test. *Keller v. State*, 604 S.W.3d 214, 228 (Tex. App.—Dallas 2020, pet. ref'd). Under Texas Rule of Evidence 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. Even so, Rule 403 "should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or complainant in such 'he said, she said' cases." *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009). Rule 403 envisions exclusion of evidence "only when there is a clear disparity between the degree of

prejudice of the offered evidence and its probative value." *Id.* at 568. Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Indeed, "all evidence against a defendant is, by its very nature, designed to be prejudicial." *Id.* This Court will reverse a trial court's determination under Rule 403 "rarely and only after a clear abuse of discretion," recognizing that the trial court is in a superior position to gauge the impact of the evidence. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022).

> When a trial court conducts a Rule 403 balancing test,
>
> it must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In any given case, "these factors may well blend together." *Id.* at 642.

### c. Application of Law to Facts

With respect to the first factor in the balancing test, evidence of a separate sexual offense against a child admitted under a article 38.37, section 2(b) is probative of a defendant's character or propensity to commit a sexual offense against a child.

*See, e.g.*, *Bradshaw v. State*, 466 S.W.3d 875, 883 (Tex. App.—Texarkana 2015, pet. ref'd). Appellant stood accused of touching two young boys on their genitals and causing the young boys to touch appellant on his genitals. The State had to prove that he: (1) intentionally or knowingly; (2) with intent to arouse/gratify the sexual desire of any person; (3) engaged in sexual contact; (4) with a child younger than 17 years of age. *See* PENAL § 21.11(a). Appellant's defensive theory was that the allegations were false, the story was implausible, and the children were not credible.

The Discord conversations with username 1[6] and username 2 (who claimed to be 15 years old) as well as appellant's text conversations with contact 2 (who claimed to be 14 years old) demonstrate that appellant has a sexual interest in underage boys. The trial court could reasonably conclude that this was strong propensity evidence and helped establish his intent to arouse/gratify sexual desire. *See Dies*, 649 S.W.3d at 285–86. Appellant's text conversation with contact 1 demonstrates a sexual interest in boys aged 11–12, and specifically an interest in teaching them how to masturbate. This behavior is similar to the conduct that appellant was accused of engaging in with H.P. and B.W. The trial court could reasonably conclude that this evidence helped establish that his actions were intentional or knowing; that he intended to arouse/gratify sexual desire; and his

---

[6] Although username 1 did not claim to be a minor, a reasonable juror could infer that fact from the context of the conversation.

–28–

propensity to do so. *See Fisk v. State*, 510 S.W.3d 165, 174 (Tex. App.—San Antonio 2016, no pet.) (similarities between extraneous and charged conduct strengthen the probative force). Accordingly, we conclude the trial court could have reasonably concluded that the evidence of appellant engaging in or attempting online solicitation of a minor and possession of child pornography had significant probative value in determining his guilt for the charged offenses of indecency with a child.

With respect to the second factor, we find that the State demonstrated its great need for the evidence. By adopting article 38.37, section 2, the legislature recognized that in child sex offenses, "there is typically very little evidence to assist prosecutors with proving their cases." *Bradshaw*, 466 S.W.3d at 884 (*quoting* Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)). The only direct evidence that the State had of appellant committing indecency with a child was the testimony of H.P. and B.W. In these situations, court routinely conclude this factor weighs in favor of the State. *Hammer*, 296 S.W.3d at 561–62 (Tex. Crim. App. 2009); *Denson v. State*, No. 03-21-00262-CR, 2023 WL 3396628, at *9 (Tex. App.—Austin May 12, 2023, no pet.) (mem. op., not designated for publication); *Mason v. State*, No. 05-21-00491-CR, 2023 WL 2033778, at *3 (Tex. App.—Dallas Feb. 16, 2023, no pet.) (mem. op., not designated for publication); *Portwood v. State*, No. 14-19-00377-CR, 2020 WL 6072721, at *5 (Tex. App.—Houston [14th Dist.] Oct. 15, 2020, no pet.) (mem. op., not designated for publication); *Duran v. State*, No. 14-18-00686-CR, 2020 WL 3697736, at *4

(Tex. App.—Houston [14th Dist.] July 7, 2020, no pet.) (mem. op., not designated for publication); *Fox v. State*, No. 04-15-00618-CR; 2017 WL 96160, at * 5 (Tex. App.—San Antonio Jan. 11, 2017, no pet.) (mem. op., not designated for publication); *Cox v. State*, 495 S.W.3d 898, 909 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *McCulloch v. State*, 39 S.W.3d 678, 682 (Tex. App.—Beaumont 2001, pet. ref'd).   Appellant tries to minimize the State's need for this evidence by urging that the evidence could not rebut any notion that H.P. and B.W. were lying because the State presented it before H.P. and B.W. testified.   But appellant ignores the fact that during opening statement defense counsel stated, "this is a case about false accusations."   It was apparent from the start that appellant's defensive position was that the conduct never occurred.   In such a case, evidence of similar extraneous acts may be necessary to corroborate the victim's account and rebut the defensive theory.   *See Wheeler v. State*, 67 S.W.3d 879, 888–89 (Tex. Crim. App. 2002). Appellant presents no case law or legal authority, nor have we found any, for the premise that a complainant has to testify prior to the admission of extraneous-offense evidence.   For the foregoing reasons, we find that the second factor also weighed in favor of admission.

With respect to the third factor, the evidence that appellant engaged in or attempted online solicitation of a minor and possession of child pornography was clearly prejudicial to his case, but the question in a Rule 403 analysis is whether the evidence was *unfairly* prejudicial.   *See Bradshaw*, 466 S.W.3d at 883 (noting that

–30–

Rule 403 does not allow exclusion of otherwise relevant evidence when evidence is merely prejudicial). The focus of Rule 403 is to assure that the danger of *unfair* prejudice is not substantially outweighed by the probative value of proffered evidence. Given article 38.37, section 2 was designed, at least in part, to allow the State to introduce evidence of the accused's prior or subsequent bad acts to show the accused's propensity to commit the charged offense, the calculus of what is unfair and what is probative has materially changed. *Price v. State*, No. 05-18-00243-CR, 2019 WL 2223600, at *5 (Tex. App.—Dallas May 23, 2019, pet. ref'd) (not designated for publication). Appellant does not identify any particular facts in the Discord and text messages that make them uniquely or unfairly prejudicial. *See Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Thus, we conclude the third factor weighed only slightly against admission.

As to the fourth factor, the ultimate issue in this case was whether appellant had committed the sexual offenses against H.P. and B.W. as alleged in the State's indictments. The trial court mitigated the tendency of the extraneous-offense evidence to confuse or distract the jury from the main issue at trial by instructing them orally when the evidence was admitted and in the jury charge that such extraneous-offense evidence could only be considered if the jury determined, beyond a reasonable doubt, that the extraneous offenses were committed and for its bearing on any relevant matter, including the character of the defendant and any acts in conformity with the character of the defendant. Thus, the trial court twice

instructed the jury in accordance with the statute. We presume that the jury follows the trial court's instructions in the manner presented. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). An appellant may refute this presumption, but he must rebut it by pointing to evidence that the jury failed to follow the instruction. *Id.* Appellant has not identified any such evidence in this case. We find the fourth factor weighed in favor of admission.

The fifth factor refers to evidence such as highly technical or scientific evidence that might mislead the jury because it is not equipped to weigh the probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641. Here, the evidence in question was neither scientific nor technical and pertained to matters including victim credibility that could easily be understood by a jury. Appellant urges the jury was misled into believing he committed the extraneous offenses relying once again on his 38.37 argument regarding territorial jurisdiction, which we have rejected. We find the fifth factor weighed in favor of admission.

With respect to the sixth factor, appellant asserts that the presentation of the evidence took nearly half of the guilt–innocence phase of trial causing the probative value of the messages to be substantially outweighed by their unfair prejudice, confusion of the issues, misleading of the jury, and undue delay. We consider direct, cross, and redirect examination when calculating the time spent developing evidence. *See Newton v. State*, 301 S.W.3d 315, 321 (Tex. App.— Waco 2009, pet. ref'd). Only one of the State's six witnesses testified to

–32–

appellant's extraneous offenses: Detective Grounds. Of the approximate 750 pages of the record containing trial testimony before the jury, her direct testimony regarding appellant's Discord messages with the username 1 took up 12 pages of the record. Her direct testimony regarding appellant's Discord messages with the username 2 took up 23 pages of the record. Her direct testimony about appellant's text interactions with contact 2 took up 24 pages of the record. Her direct testimony about appellant's conversations with contact 1 took up 12 pages of the record. In calculating the number of pages in the record devoted to extraneous-offense evidence appellant counts 176 pages of his own cross-examination of Detective Grounds; 70 pages of his objections to the evidence; and 14 pages of his own voir dire examinations of Detective Grounds. Because we consider direct, cross and redirect examination in calculating the time spent developing the evidence, we conclude this factor weighed against admission, although it is highly unlikely the trial court anticipated the parties would spend the amount of time they did when it decided to admit the extraneous-offense evidence.

Given our standard of review, the presumption in favor of admissibility, and the factors discussed above, and concluding four of the factors weighed in favor of admission, one weighed slightly against, and one weighed against, we conclude that the district court did not abuse its discretion by overruling appellant's Rule 403 objection and admitting the extraneous-offense evidence. *See Hammer*, 296 S.W.3d at 568 (explaining that exclusion under

"Rule 403 . . . should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant").

We overrule appellant's third and fourth issues.

### 3. Authentication of Evidence

In his fifth issue, appellant contends that the text messages between appellant and contact 1 and contract 2 were inadmissible over his chain-of-custody objection. He claims that to authenticate physical evidence or the results of scientific testing, the State must prove both the beginning and end of the chain of custody. Appellant admits that the text messages came from an extraction of his cell phone, but contends the State failed to prove the beginning of the chain of custody for that phone, and thus, failed to properly authenticate the messages. The State responds urging Detective Grounds adequately linked the cell phone to appellant for authentication purposes.

We review a trial court's ruling on authentication issues under an abuse of discretion standard. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). This deferential standard requires us to uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Id.* A trial court judge is given considerable latitude with regard to evidentiary rulings. *Id.* Different trial judges may "reach different conclusions in different trials on substantially similar facts without abusing their discretion. *Id.*

If the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least within the zone of reasonable disagreement, we should not interfere. *Id.* It is the jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims; the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic. *Id.* This has been described as a "liberal standard of admissibility." *Id.*

The Texas Rules of Evidence do not specifically address chain of custody. Instead, Texas Rule of Evidence 901 governs the authentication requirement for the admissibility of evidence. TEX. R. EVID. 901. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. *Id.* Conclusive proof of authenticity before allowing admission of disputed evidence is not required. *See Reed v. State*, 811 S.W.2d 582, 587 (Tex. Crim. App. 1991) (citing *United States v. Jimenez Lopez*, 873 F.2d 769 (5th Cir. 1989)). Rule 901 "merely requires some evidence sufficient to support a finding that evidence in question is what the proponent claims." *Id.*

Authenticity may be established with evidence of "distinctive characteristics and the like," which include "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id.* If the party seeking admission cannot identify the evidence

–35–

"through distinctive markings . . . or if the evidence is fungible, as are drugs or tests results," proof of chain of custody is required. *Davis v. State*, 992 S.W.2d 8, 10–11 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (citing *Hammett v. State*, 578 S.W.2d 699, 708 (Tex. Crim. App. 1979)). The chain-of-custody requirement generally applies to indistinguishable objects. *See Foley v. State*, No. 01-11-00113-CR, 2012 WL 1564685, at *4 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. ref'd) (mem. op., not designated for publication) (sample of heroin); *Frasier v. State*, No. 03-09-00354-CR, 2010 WL 3058256, at *2 (Tex. App.—Austin Aug. 5, 2010, no pet.) (mem. op., not designated for publication) (bag of methamphetamine); *Clemens v. State*, No. 03-05-00156-CR, 2008 WL 2065986, at *5–6 (Tex. App.—Austin May 15, 2008, no pet.) (mem. op., not designated for publication) (samples of gasoline);

At trial, Detective Grounds testified, without objection, that, at her request, Detective Moore seized appellant's cell phone when he arrested appellant and delivered it to her via certified mail. In addition, Detective Grounds indicated that she obtained a search warrant for the phone and was able to unlock it because she was given the passcode for same. She found identifiers in the phone that matched appellant, including text messages between appellant and B.W. and appellant's usernames on Discord and Snapchat. She was confident that it was appellant's phone. The facts the State developed through Detective Grounds are similar to those in *Berhe v. State*, where the testifying officer received a cell phone from the task force that arrested the defendant and otherwise identified the phone as having the

defendant's phone number. *See* No. 01-17-00540-CR, 2018 WL 4781070, *3 (Tex. App.—Houston [1st. Dist.] Oct. 4, 2018, no pet.) (mem. op., not designated for publication). The Houston Court determined that the cell phone was properly authenticated despite the fact that the arresting officers did not testify as to the seizing the phone, concluding that the testifying officer presented sufficient circumstantial evidence to overcome a chain-of-custody objection. *See id.*

The situation presented here can be analogized to a circumstance where Texas courts routinely find that the State has sufficiently proven the beginning of a chain of custody: contraband that a non-testifying informant delivered to police following a drug buy. *See, e.g.*, *Cain v. State*, 501 S.W.3d 172, 175—76 (Tex. App.—Texarkana 2016, no pet.); *Watson v. State*, 421 S.W.3d 186, 192 (Tex. App.—San Antonio 2013, pet. ref'd); *Hawkins v. State*, No. 10-18-00270-CR, 2020 WL 5938818, *3 (Tex. App.—Waco Aug. 10, 2020, pet. ref'd) (mem. op., not designated for publication). In these cases, the contraband has been properly authenticated despite the sponsoring officers not personally witnessing the non-testifying informant receive the contraband from the defendant. *See e.g., Cain*, 501 S.W.3d at 175–76; *Watson*, 421 S.W.3d at 192; *Hawkins*, 2020 WL 5938818 at *3.

Detective Grounds's testimony about how she received the cell phone from the arresting officer, along with the passcode for the phone, and her discovery of identifiers matching appellant on this phone, constitute sufficient circumstantial evidence to place the text messages' authenticity (including the first step in the chain

–37–

of custody) within the zone of reasonable disagreement. *See generally Berhe*, 2018 WL 4781070 at *3. Accordingly, the trial court did not abuse its discretion by admitting messages extracted from the cell phone over appellant's chain-of-custody objection.

Appellant contends Detective Grounds never testified that the extraction accurately copied what was on the phone. Instead, she simply testified that the printed reports were accurate copies *of the extraction*. Appellant contends Detective Ground's testimony left unresolved the question of whether the extraction was an accurate copy of the phone, and it therefore failed to authenticate the extraction itself, as required by *Wright* and *Villareal-Garcia*. *Villareal-Garcia v. State*, 671 S.W.3d 791 (Tex. App.—Dallas 2023, no pet.); *Wright v. State*, 618 S.W.3d 887 (Tex. App.—Fort Worth 2021, no pet.). Appellant did not object to the evidence on the basis that the State did not authenticate the Cellebrite extraction. Thus, we do not address this argument here. Tex. R. App. P. 33.1(a).

We overrule appellant's fifth issue.

### B. Ruling on Hearsay Objection

In his sixth issue, appellant claims the trial court abused its discretion in overruling his hearsay objection to the drawing depicted below that H.P. made of the

second floor of appellant's brother's home during his interview with Eligio Molina.



STATE'S
EXHIBIT
44
DRR  1-10-23

In response to his objection, the State urged that the defense opened the door to its admission into evidence during its questioning of Molina. During cross examination, defense counsel asked Molina if he used "drawings" during the forensic interview. Molina responded that he asked H.P. "to draw a layout of the area." On redirect examination, the State offered the drawing as State's Exhibit 44, arguing that the defense had "opened the door" because "they asked the witness about the drawing, which included comments by H.P. as to where appellant showed "porn videos" and "touched [his] private parts." The State further urges that the drawing was admissible under the rule of optional completeness. *See* TEX. R. EVID.

–39–

107. Appellant contends that there is no "open-door" exception to the hearsay rule and that drawing was not admissible under the rule of optional completeness.

We need not determine whether appellant opened the door to the admission of the drawing or whether the drawing was admissible under the optional completeness rule because we conclude appellant was not harmed by the admission of same. The erroneous admission of hearsay is non-constitutional error. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). This Court disregards such errors unless the error effects a defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). Error does not affect a substantial right, and is thus harmless, if it has no more than a slight effect on the jury's verdict. *See Macedo*, 629 S.W.3d at 240. In determining an error's effect, this Court considers the character of the alleged error and how it might be considered in connection with other evidence; the nature, existence, and degree of evidence supporting the verdict; and whether the State emphasized the error. *Id*.

Appellant contends that he suffered harm because H.P.'s and B.W.'s accounts of where appellant showed pornography to them and where the alleged offense occurred were inconsistent, and H.P.'s hand-drawn floorplan helped to resolve those inconsistencies.

But the drawing did not resolve the inconsistencies, such as they were. B.W. and H.P. testified before the drawing was introduced into evidence through the forensic interviewer. B.W. recalled that they viewed pornography in the game room

–40–

and H.P. maintained they viewed same in the closet. With respect to where the offenses occurred, B.W. stated that the offenses occurred in the closet and H.P. recalled they occurred in the attic. While the drawing was consistent with H.P.'s testimony at trial, it did not alter or in any way effect B.W.'s testimony.

Moreover, notwithstanding the slight variations in H.P.'s and B.W.'s recollections of where certain events occurred, the forensic interviewer explained he looks for general and sensory details in determining whether abuse occurred, and the boys were able to give that detail, including a description of appellant's penis and H.P.'s testimony that the color of appellant's pubic hair was "ginger." Furthermore, the jury had already seen significant propensity evidence from appellant's extraneous solicitations of minors and his possession of child pornography, which we have concluded was properly admitted into evidence. The State mentioned the floorplan in closing arguments, but simply pointed out that H.P.'s account of the events remained consistent over time. On the record before us, we conclude that the admission of the hand-drawn floorplan did not have more than a slight effect on the jury and did not affect appellant's substantial rights.

We overrule appellant's sixth issue.

## II.    Jury Charge

In his seventh and eighth issues, appellant asserts there were errors in the jury charge.

**A. Standard of Review**

The trial court must provide the jury with a written charge distinctly setting forth the law applicable to the case. CRIM. PROC. art. 36.14. The purpose of the charge is to inform the jury of the applicable law, guide them in its application to the case, and to prevent confusion. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

Review of alleged jury-charge error is a two-step process: first, the reviewing court must decide whether error exists; second, if error exists, it must decide whether the appellant was harmed by the erroneous charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). If a defendant objects to a jury charge at trial, an error is reversible if the record shows that the defendant suffered "some harm." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Under this standard, the record must reveal "actual" and not merely "theoretical" harm. *French v. State*, 563 S.W.3d 228, 235 (Tex. Crim. App. 2018). To determine whether "some" harm exists, this Court considers the error in light of the four *Almanza* factors: (1) the entire jury charge, (2) the state of the evidence, (3) the jury arguments, and (4) any other relevant information as revealed by the record as a whole. *Id*. at 235–36. Neither party bears the burden to show harm. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022).

**B. Definition of Individual**

In his seventh issue, appellant asserts there was jury charge error in the court's article 38.37, section 2 instruction because it incorrectly defined the offense of online solicitation of a minor.

The trial court instructed the jury that the defendant is on trial solely for the charges contained in the indictment. It further instructed:

> If there is any evidence before you in this case that this defendant committed an offense under Section 33.021 of the Penal Code, namely Online Solicitation of a Minor, an offense under Section 43.26 of the Penal Code, namely Possession of Child Pornography, or an attempt to commit either of these offenses, and you unanimously find beyond a reasonable doubt that this defendant committed such offenses, you may consider such evidence for its bearing on any relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

The trial court then instructed the jury regarding the elements of Online Solicitation of a Minor, which include communicating in a sexually explicit manner with a minor, distributing sexually explicit material to a minor, or soliciting a minor to meet with someone with the intent that the minor engage in sexual contact or intercourse. The trial court then defined a "minor" as "an individual who is younger than 17 years of age or an individual whom the actor believes to be younger than 17 years of age." This is the statutory definition of the word "minor." PENAL § 33.021. Appellant contends that because the definition of "minor" includes the term "individual," the jury charge should have included Penal Code section 1.07's definition of

–43–

"individual" as a human being who is alive. TEX. PENAL CODE ANN. § 1.07(a)(26).[7] The trial court denied appellant's request to include this definition. Appellant contends that the trial court should have included this definition so that the jury could consider the possibility that appellant was communicating with chatbots rather than human beings.

Even it we assume, without deciding, the trial court erred in refusing to include appellant's requested instruction, we cannot conclude that he suffered some harm therefrom. The common understanding of the term individual means a human being even without the statutory definition. In addition, the definition of minor itself being an individual who is younger than 17 years of age, likewise establishes the reference is to a human being, rather than a chatbot. The definition of sexual contact includes the words "another person" which also indicates the reference is to a human being. Moreover, in addition to the testimony of B.W. and H.P. describing appellant's acts of indecency with a child, there was evidence of the extraneous offense of possession of child pornography, which was not the subject of appellant's request for an instruction on the definition of individual. Accordingly, we conclude appellant did not suffer any actual harm by the trial court's refusal to include his requested instruction on the term "individual." We overrule appellant's seventh issue.

---

[7] Section 1.07(a)(26) defines "individual" as "a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." PENAL § 1.07(a)(26).

### C. Territorial Jurisdiction Instruction

In his eighth issue, appellant urges the article 38.37, section 2 instruction in the jury charge erroneously failed to instruct the jury that Texas must have jurisdiction over an offense for it to be an offense under the Penal Code. This issue is effectively a restatement of appellant's first and second issues, which we have resolved against him. We, likewise, and for the same reasons, resolve appellant's eighth issue against him.

## III. Modification of Judgments

In his final issue, appellant asserts the trial court improperly assessed court costs in four of the five judgments. The State agrees.

"In a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against the defendant." CRIM. PROC. art. 102.073(a). For purposes of this rule, a person convicted of two or more offenses in the same trial or plea proceeding is convicted of those offenses in a "single criminal action." *See Garcia v. State*, No. 05-21-01134-CR, 2022 WL 5113172, at *1 (Tex. App.—Dallas Oct. 5, 2022, no pet.) (mem. op., not designated for publication) (quoting *Hurlburt v. State*, 506 S.W.3d 199, 201–04 (Tex. App.—Waco 2016, no pet.)). If the convictions are for the same category of offense and the costs are the same, the costs should be assessed in the case with the lowest trial court cause number. *See Thomas v. State*, No. 05-20-00114-CR, 2021 WL 2948550, at *2 (Tex. App.—Dallas June

–45–

30, 2021, pet. ref'd) (mem. op., not designated for publication) (citing CRIM. PROC. art. 102.073(b); *Johnson v. State*, No. 05-19-00641-CR, 2020 WL 4745552, at *5 (Tex. App.—Dallas Aug. 17, 2020, no pet.) (mem. op., not designated for publication)).

Here, appellant was convicted of five second-degree felony offenses in a single trial. *See* TEX. PEN. CODE ANN. § 21.11(d) (indecency with child by sexual contact). Court costs, therefore, should have been assessed only once in the case with the lowest trial court cause number, 380-81904-2021 Count I.

The record shows that appellant was not only assessed court costs in the amount of $455 in trial court cause number 380-81904-2021 Count I, but he was also assessed court costs in the amount of $455 in trial court cause number 380-81904-2021 Counts II and III, and in trial court cause number 380-81905-2021 Counts I and II, even though the counts were tried together. Because the fees charged in trial court cause numbers 380-81904-2021 Counts II and III, and in trial court cause numbers 380-81905-2021 Counts I and II, were already assessed in trial court cause number 380-81904-2021 Count I, those fees are duplicative. We sustain appellant's nineth issue and modify the judgments in trial court cause number 380-81904-2021 Counts II and III, and cause number 380-81905-2021 Counts I and II, to delete the $455 in duplicative costs in each judgment.

## CONCLUSION

We affirm the trial court's judgments as modified.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

Do Not Publish
Tex. R. App. P. 47

230306F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KEVIN SCOTT CHATLEY,
Appellant

No. 05-23-00306-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 380-81904-
2021.
Opinion delivered by Justice
Kennedy. Justices Nowell and Miskel
participating.

Based on the Court's opinion of this date, the judgment of the trial court in cause number 380-81904-2021 Count I is **AFFIRMED** and the judgment of the trial court in cause number 380-81904-2020 Counts, II and III are **MODIFIED** as follows:

delete court costs of $455.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 1st day of April, 2024.



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

KEVIN SCOTT CHATLEY,
Appellant

No. 05-23-00452-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-81905-2021.
Opinion delivered by Justice Kennedy. Justices Nowell and Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court in cause number 380-81904-2021 Counts I and II are **MODIFIED** as follows:

delete court costs of $455.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 1st day of April, 2024.